NO. 12-12928-EE

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff/appellee,*

v.

QUARTAVIOUS DAVIS,
*Defendant/appellant.*

On Appeal from the United States District Court
for the Southern District of Florida

REPLY BRIEF OF THE APPELLANT
QUARTAVIOUS DAVIS

JACQUELINE SHAPIRO, ESQ.
Counsel for Appellant
40 N.W. 3rd Street, PH 1
Miami, Florida 33128
Tel.:  (305) 403-8207
Fax:  (305) 403-8209

THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)

**TABLE OF CONTENTS**

TABLE OF CITATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

ARGUMENT AND CITATIONS OF AUTHORITY. . . . . . . . . . . . . . . . . . . . . 1

I.    DAVIS'S CONVICTION ON COUNT 17 (AIDING AND
      ABETTING THE USE OF A FIREARM IN CONNECTION
      WITH THE MAYORS ROBBERY) MUST BE VACATED,
      BECAUSE IT IS NOT SUPPORTED BY SUFFICIENT
      EVIDENCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   DAVIS'S FOURTH AMENDMENT RIGHTS WERE
      VIOLATED BY THE WARRANTLESS SEIZURE OF CELL
      TOWER SITE DATA, ENTITLING HIM TO A NEW TRIAL. . . . . 5

      A.    Davis Did Not Knowingly or Voluntarily Share Location
            Information. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.    The Long-Term Tracking of Davis's Cell Phone Was an
            Unconstitutionally Invasive Search. . . . . . . . . . . . . . . . . . . 8

      C.    The Good Faith Exception to the Exclusionary Rule Does
            Not Apply. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

i

III.   THE PROSECUTOR'S MISCONDUCT DURING CLOSING
       ARGUMENT   RENDERED   DAVIS'S   TRIAL   UNFAIR,
       ENTITLING HIM TO A NEW TRIAL. . . . . . . . . . . . . . . . . . . . . . 13

IV.    THE  CUMULATIVE  EFFECT  AND  PREJUDICE  ARISING
       FROM MULTIPLE TRIAL ERRORS COMPELS REVERSAL
       OF DAVIS'S CONVICTIONS AND A REMAND FOR A NEW
       TRIAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

V.     THE   DISTRICT   COURT   VIOLATED   DAVIS'S   SIXTH
       AMENDMENT JURY TRIAL RIGHT WHEN IT INCREASED
       THE MANDATORY MINIMUM PENALTIES FOR EACH OF
       HIS FIREARMS CONVICTIONS BASED ON JUDICIAL FACT
       FINDING, ENTITLING HIM TO BE RESENTENCED. . . . . . . . 16

       A.    The District Court Plainly Erred When it Increased the
             Mandatory Minimum Penalty for Count 3 Based on its
             Finding That a Firearm Was Brandished. . . . . . . . . . . . . . . . 16

       B.    The District Court Erred When it Increased the Mandatory
             Minimum Penalty for Counts 5, 7, 9, 11, 14 and 17 Based
             on its Finding That They Were "Second or Subsequent"
             Convictions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VI.    DAVIS'S CONSTITUTIONAL GUARANTEE AGAINST CRUEL AND UNUSUAL PUNISHMENT WAS VIOLATED WHEN HE RECEIVED A 162-YEAR SENTENCE OF IMPRISONMENT FOR CRIMES COMMITTED DURING A BRIEF PERIOD WHEN HE WAS A TEENAGER, SUFFERED FROM BIPOLAR DISORDER AND A SEVERE LEARNING DISABILITY, AND HAD NO PRIOR CONVICTIONS. . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF CITATIONS

## CASES:

*Alleyne v. United States*, 133 S. Ct. 2151 (2013). . . . . . . . . . . . . . . . . . . . 16, 18, 19

*Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219 (1998). .  19-21

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000). . . . . . . . . . . . . . 19

*Bazemore v. United States*, 138 F.3d 947 (11th Cir. 1998). . . . . . . . . . . . . . . . 4, 5

*Graham v. Florida*, 130 S. Ct. 2011 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Illinois v. Krull*, 480 U.S. 340 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n*

> *Serv. to Disclose Records to Gov't*, 620 F.3d 304 (3d Cir. 2010) .. . . . . . . . 7

*In re Application of U.S. For Historical Cell Site Data*,

> 724 F.3d 600 (5th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Miller v. Alabama*, 132 S. Ct. 2455 (2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254 (2005). . . . . . . . . . . . 20, 21

*United States v. Accardo*, 749 F.2d 1477 (11th Cir. 1985). . . . . . . . . . . . . . . . . 12

*United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781 (2002). . . . . . . . . . . . 16, 17

*United States v. Gibson*, 434 F.3d 1234 (11th Cir. 2006). . . . . . . . . . . . . . . . . . 21

*United States v. Hamblin*, 911 F.2d 551 (11th Cir. 1990). . . . . . . . . . . . . . . 1, 3-5

*United States v. Jones*, 132 S. Ct. 945 (2012).. . . . . . . . . . . . . . . . . . . . . . . . . . 8-11

iv

*United States v. Leon*, 468 U.S. 897 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. McKinley*, ___ F.3d ___, No. 12-14655,

    2013 WL 5615057 (11th Cir. Oct. 15, 2013). . . . . . . . . . . . . . . . . . . . . . 17, 18

## STATUTORY AND OTHER AUTHORITY:

U.S. Const. amend. IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

U.S. Const. amend. VI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

U.S. Const. amend. VIII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

18 U.S.C. § 924(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 21

**ARGUMENT AND CITATIONS OF AUTHORITY**

I.   **DAVIS'S CONVICTION ON COUNT 17 (AIDING AND ABETTING THE USE OF A FIREARM IN CONNECTION WITH THE MAYORS ROBBERY) MUST BE VACATED, BECAUSE IT IS NOT SUPPORTED BY SUFFICIENT EVIDENCE.**

Davis established in his initial brief that the district court erred by denying his motion for judgment of acquittal on Count 17 (D.E. 285:54, 70), because the evidence failed to establish he facilitated his co-defendant's use of a firearm during the Mayors jewelry store robbery.  Appellant's Initial Br. at 22-28.

In defense of the conviction on Count 17, the government argues Davis had advance knowledge that a co-defendant would use a handgun during the Mayors robbery.  Appellee's Br. at 17-18.  The government, however, failed to prove prior knowledge.  This failure is fatal to the conviction for aiding and abetting a violation of 18 U.S.C. § 924(c).  In *United States v. Hamblin*, 911 F.2d 551, 558 (11th Cir. 1990), this Court reversed a getaway driver's conviction for aiding and abetting a § 924(c) offense where the defendant learned of the gun use only while the underlying bank robbery was underway.  The defendant admitted that he heard gunfire during the robbery.  *Id*.  Similar circumstances exist in this case – the government did not prove that Davis knew, before the crime was underway, that Fisher was carrying a gun.

1

The facts cited by the government to support a finding of prior knowledge fall short.  The government first argues Davis must have known about the gun, because Rob, the driver, handed the gun to Fisher in Davis's presence, before driving them to the robbery site.  Appellee's Br. at 17.  The evidence does not show Davis was aware of this handoff, however.  Three men – Fisher, Martin, and Davis – were in the back seat of the car when the driver handed the gun to Fisher.  D.E. 279:230-31.  Martin entered the car at the same time as Fisher; Davis was already inside.  D.E. 279:229.  Martin may have sat between Fisher and Davis, and Davis's view of the gun handoff may have been obstructed.  While Martin testified he saw the driver hand Fisher the gun, D.E. 279:231, he did not testify that Davis saw the handoff or that he was even looking in their direction.  Also, Davis did not acknowledge the presence of the gun.  Moreover, although the government asserts the driver "openly handed" the gun to Fisher, Appellee's Br. at 17, Martin did not testify to that fact.  It is more likely that the driver, who was parked in a public area, acted discretely.  The evidence did not prove that Davis saw the driver hand Fisher the gun.

Next, the government seeks to establish prior knowledge by arguing the robbery was well-planned.  Appellee's Brief at 17.  Davis, however, had no part in the planning.  Instead, the evidence showed John Watson, a/k/a/ Rat Boy, planned the robbery, and Davis was recruited as a last-minute substitute for another participant

2

who dropped out of the scheme.  D.E. 279:216, 225, 227-28.  Knowledge cannot be imputed to Davis based on planning done by others.

The use of guns in the prior robberies also does not support an inference that Davis had prior knowledge that a gun would be used in the Mayors robbery.  As reflected in the indictment and in trial testimony, the Mayors robbery was unrelated to the earlier robberies and was planned by another person.  The use of guns in the earlier robberies therefore could not have established any prior knowledge or expectation of gun use during the Mayors robbery.

At most, the evidence cited by the government may have allowed the jury to intuit that he had prior knowledge of the gun.  Jurors' intuition, however, cannot support a conviction that added 25 years to Davis's sentence.  In *Hamblin*, this Court explained, "Intuitively, a reasonable jury might conclude that Hamblin had to know about the gun beforehand, because it would be difficult to rob a bank without a weapon.  However, the government had the burden of proving that Hamblin shared the criminal intent of his co-defendant with respect to the firearm charges…." *Hamblin*, 911 F.2d at 558.

Next, the government argues that Davis's continued participation in the robbery after Fisher displayed his gun in the store satisfies the knowledge requirement.  *Hamblin* establishes that it does not.  In *Hamblin*, the defendant served

3

as a getaway driver after hearing his accomplice fire a gun during a bank robbery. *Hamblin*, 911 F.2d at 558. The Court concluded that the knowledge acquired during the robbery did not support Hamblin's aiding and abetting conviction. *Id*. at 558-59.

In any event, *Hamblin* and *Bazemore v. United States*, 138 F.3d 947 (11th Cir. 1998), firmly establish that in order to prove a defendant aided and abetted gun use, the government must prove not only knowledge of the gun, but also the existence of a link between the defendant and the gun. In *Hamblin*, 911 F.2d at 558 n.4, the Court held that "intent to aid and abet…the commission of an armed bank robbery …requires an additional element of proof beyond that needed to convict for aiding and abetting an unarmed robbery. Charges under 18 U.S.C. § 924(c) cannot be proven through guilt by association…." *Accord Bazemore,* 138 F.3d at 949 ("In addition to knowledge, in order to sustain a conviction under an aiding and abetting theory, there must be some proof linking the defendant to the gun, because section 924(c) does not permit guilt by association.") (internal quotation marks omitted). In *Bazemore*, the Court affirmed an aiding and abetting conviction after holding the defendant facilitated his co-defendant's use of a firearm by transporting the co-defendant and the firearm to the scene of the robbery. In *Hamblin*, the Court reversed an aiding and abetting conviction after concluding the defendant lacked a link to the firearm. Here, where Davis played no part in providing or transporting the gun used

4

by his co-defendant, the government has failed to prove the required connection to the gun.

Finally, the government cites *Bazemore* for the proposition that Davis's conviction on Count 17 should be affirmed because he accepted the benefit of his co-defendant's gun use. Appellee's Brief at 19; *see Bazemore*, 138 F.3d at 949-50. This fact, however, does not eliminate the prior knowledge and connection requirements established in *Hamblin* and *Bazemore*.

For these reasons, Davis's conviction on Count 17 must be reversed, and the resulting 25-year consecutive sentence must be vacated.

## II. DAVIS'S FOURTH AMENDMENT RIGHTS WERE VIOLATED BY THE WARRANTLESS SEIZURE OF CELL TOWER SITE DATA, ENTITLING HIM TO A NEW TRIAL.

### A. Davis Did Not Knowingly or Voluntarily Share Location Information.

The government violated Davis's reasonable expectation of privacy under the Fourth Amendment when it acquired long term cell tower site data without a warrant. *See* Appellant's Initial Br. at 28-34; Brief of Amici Curiae.

During closing argument, the prosecutor made the following statements:

But *what this defendant could not have known was* that when he was terrorizing South Florida with a pistol in his hand and a t-shirt over his face, *his cell phone was tracking his every moment.*

5

D.E. 287:4-5 (emphasis added).

> But what's really significant about this cell site evidence, what is almost remarkable about the cell site evidence, is that obviously Willie Smith, like the defendant probably, had no idea that by bringing their cell phones with them to these robberies they were allowing MetroPCS and now all of you to follow their movements on the days and at the times of the robberies….

D.E. 287:14. Clearly, the prosecutor was fully aware that Davis did not knowingly convey his location information to the phone company.

The government now argues Davis had no expectation of privacy, because he knew the cell tower site data would be received and stored by his cell phone service provider, and he voluntarily allowed the collection of the data by using his cell phone. Appellee's Br. at 27-29. This argument is fatally flawed, given the prosecutor's contrary jury argument. Significantly, the prosecutor stressed Davis's ignorance of the location tracking data as a fact demonstrating guilt.

Even absent the prosecutor's arguments to the jury, there would be no reason to assume Davis knew he was conveying location evidence to his service provider each time he used his phone. By engaging in the physical act of dialing a phone number, a phone user reasonably could deduce that he was sharing the dialed number with his service provider. The collection of location information, however, occurs covertly. Also, while some cell phone bills may document phone numbers called, or

from whom calls are received, cell tower location information is not routinely

provided to customers.   The involuntary conveyance of location data does not

eliminate an individual's expectation of privacy, as explained by the Third Circuit:

> A cell phone customer has not "voluntarily" shared his location
> information with a cellular provider in any meaningful way.… [I]t is
> unlikely that cell phone customers are aware that their cell phone
> providers collect and store historical location information. Therefore,
> [w]hen a cell phone user makes a call, the only information that is
> voluntarily and knowingly conveyed to the phone company is the
> number that is dialed and there is no indication to the user that making
> that call will also locate the caller; when a cell phone user receives a
> call, he hasn't voluntarily exposed anything at all.

*In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv.*

*to Disclose Records to Gov't*, 620 F.3d 304, 317-18 (3d Cir. 2010) (internal quotation

marks omitted).

The Fifth Circuit has reached the opposite conclusion.  *See In re Application*

*of U.S. For Historical Cell Site Data*, 724 F.3d 600, 612 (5th Cir. 2013) (agreeing

with the government that cell phone users "know that they convey information about

their location to their service providers when they make a call and that they

voluntarily continue to make such calls").  The Fifth Circuit's reasoning, however,

is dependent on facts not proven in this case.  The Fifth Circuit found that cell phone

customers knowingly convey location information to cell phone service providers and

that customers know this information is collected.  These findings were based in large

7

part on evidence that some service providers provide this information to their customers. *In re Application of U.S. For Historical Cell Site Data*, 724 F.3d at 613. The government points to no such evidence in this case. Moreover, even if such information is available from Davis's service provider, there is no evidence that a reasonable person in Davis's position would be aware of it.

The Fifth Circuit's findings also rely on the assumption that cell phone users have a detailed understanding of how calls are transmitted. *Id.* In this case, there is no evidence that Davis understood how or why the dialing of a phone number caused the transmission of communications between two cell phones.

For these reasons, the assumptions supporting the Fifth Circuit's findings that cell phone users knowingly acquiesce in the creation and collection of location information have no application in this case. Instead, the government should be bound by the prosecutor's position at trial that Davis did not know his cell phone use was revealing his location.

### B.    The Long-Term Tracking of Davis's Cell Phone Was an Unconstitutionally Invasive Search.

Five Supreme Court justices agreed in *United States v. Jones*, 132 S. Ct. 945 (2012), that (1) the government conducts a Fourth Amendment search when it engages in prolonged location tracking, and (2) prolonged location tracking violates

reasonable expectations of privacy.  *See* 132 S. Ct. at 964 (Alito, J., concurring in the judgment); *id*. at 955 (Sotomayor, J., concurring).   While the majority opinion in *Jones* relied on a trespass analysis in concluding a search had occurred, it specified that "[s]ituations involving merely the transmission of electronic signals without trespass" are subject to analysis to determine whether reasonable expectations of privacy have been violated.  *Jones*, 132 S. Ct. at 953.

In *Jones*, law enforcement agents placed an electronic tracking device on the defendant's truck, and over the following 28 days, information about his movements was transmitted to a government computer.  132 S. Ct. at 948.  The opinion does not reveal whether and to what degree agents monitored the movements of the defendant's truck in real time, although it reflects that agents replaced the tracking device's battery on one occasion.   *Id*.   In this case, the government obtained information tracking the whereabouts of Davis's cell phone, and presumably Davis, over a 67-day period.  The extended tracking of Davis's cell phone was a search, just as the tracking of the truck in *Jones* was a search.

The government seeks to distinguish between the location tracking discussed in *Jones* and the location tracking to which Davis was subjected.  Appellee's Br. at 23-26.  The differences noted by the government are immaterial to the legal analysis.

9

First, the government argues the location tracking in *Jones* was more invasive because it was continuous, while Davis's location was disclosed only when he placed or received a phone call.  Appellee's Br. at 25.  Davis, however, placed a high volume of phone calls.  Data obtained by the government documented his locations during 5,803 phone calls that he placed or received over 67 days.  That averages out to 86 calls, or location points, per day.  *See* Brief of *Amici Curiae* at 13-14.  The magnitude of information collected establishes the invasive nature of the data gathering.

Next, the government argues *Jones* is distinguishable on the basis that the location data generated from Davis's phone was imprecise.  Appellee's Br. at 25-26.  This argument is in direct conflict with arguments made by the prosecutor.  For example, the prosecutor told the district court that the cell tower location evidence showed Davis's phone was "literally right up against the Amerika Gas Station immediately preceding and after that robbery occurred," D.E. 285:58, and that Davis's phone was "literally… right next door to the Walgreens's just before and just after that store was robbed," D.E. 285:61.  Additionally, the prosecutor argued to the jury that cell tower evidence showed Davis and his alleged co-conspirators were "literally right on top of the Advance Auto Parts one minute before that robbery took place." D.E. 287:13.  Through testimony and argument, the government relied on Davis's cell tower site data to show where he was, who he was with, and what he was

10

doing. *See, e.g.*, D.E. 285:23-38, 55-56, 58, 61, 64-65, 66; D.E. 287:4-5, 12-15, 23, 63-66.[1] The government's current argument that cell phone tracking is too imprecise to create an intrusion into a person's privacy is belied by its insistence at trial that the jury should convict Davis on the basis of cell phone location evidence. *See, e.g.*, D.E. 287:287:4-5, 12-15, 23, 63-66.

Next, the government argues the location tracking in *Jones* was more invasive than the location tracking in this case because it was done in real time, unlike the historical data collected about Davis. Appellee's Br. at 26. There is no meaningful distinction, however, between the intrusion created by contemporaneous location tracking and historical location tracking. Both document a person's comings and goings and reveal details of the subject's personal life. *See* Brief of *Amici Curiae* at 20.

Contrary to the government's arguments, Davis was subjected to an unconstitutional invasion of his privacy. The government then exploited the improperly obtained evidence to secure Davis's convictions and, ultimately, his longer-than life sentence. Davis is entitled to relief.

---

[1]*See also* Brief of Amici Curiae at 7-13, 14-16, 22-23, detailing the degree of precision permitted by the tracking of cell phones.

### C.    The Good Faith Exception to the Exclusionary Rule Does Not Apply.

The government nevertheless asks the district court to affirm the admission of the cell tower site data based on the good faith exception to the exclusionary rule. Appellee's Br. at 29-30 (citing *United States v. Leon*, 468 U.S. 897 (1984)). The government's reliance on the good faith doctrine is misplaced.

The district court did not explain its reasons for denying the motion to suppress the cell tower site data.  *See* D.E. 276; D.E. 277:45.  Thus, the record reflects no finding that the government acted in good faith in seeking the cell tower site data without obtaining a warrant.  Absent a finding of good faith, the admission of the cell tower site data cannot be affirmed on that basis.  *See United States v. Accardo*, 749 F.2d 1477, 1481 (11th Cir. 1985) (remanding to permit the district court to decide the good faith issue in the first instance).

Moreover, while evidence obtained by law enforcement officers in reliance on a statute later found to be unconstitutional may be admissible under the good faith doctrine, *see Illinois v. Krull*, 480 U.S. 340, 355 (1987), this case presents materially different circumstances.  The cell tower site data was obtained by a prosecutor, whose legal training and experience rendered unreasonable any reliance on a statute

12

that authorized a warrantless intrusion on a person's reasonable expectation of privacy.

Because the cell phone location evidence was obtained in violation of Davis's Fourth Amendment rights, and because its admission severely prejudiced Davis, his convictions must be vacated.

### III.    THE PROSECUTOR'S MISCONDUCT DURING CLOSING ARGUMENT RENDERED DAVIS'S TRIAL UNFAIR, ENTITLING HIM TO A NEW TRIAL.

Davis established in his initial brief that he was subjected to an unfair trial, because the prosecutor engaged in misconduct during his closing argument. Appellant's Initial Br. at 34-42.

The government continues, on appeal, to exaggerate the type and quantity of evidence it offered against Davis.  The government's persistent exaggeration is demonstrated by its baffling defense of the prosecutor's wholly inaccurate claim that Davis's blood was "all over" the seats of the car used after the Mayors robbery.  *See* D.E. 287:26 ("Mr. Martin's blood, just like the defendant's blood, was all over those seats."); Appellee's Br. at 34-35.

In analyzing evidence taken from the BMW used in the Mayors robbery, investigators linked just three small droplets of possible blood to Davis.  D.E. 279:171.  The three droplets were small and closely-spaced.  D.E. 279:73-76, 99.

13

Indeed, the droplets were so small and close together that an officer used a single swab to collect the evidence. D.E. 279:76, 99. Clearly, the evidence did not support the prosecutor's argument that Davis's blood was found "all over [the car] seats." D.E. 287:26. Thus, contrary to the government's current argument (Appellee's Br. at 34-35), the prosecutor's claim that Davis's blood was "all over those seats" was both "incorrect" and "improper."

In its defense of the prosecutor's improper vouching for two essential government witnesses, the government chooses simply to disregard some of the improper comments. Specifically, the government fails to acknowledge both (1) the prosecutor's flat assertion that "Mr. Smith and Mr. Martin told the truth" about their own involvement in the robberies and about the involvement of Davis's other co-defendants, and (2) the prosecutor's assurance that their testimony "was all true." D.E. 287:23; see Appellant's Initial Br. at 35-36, 39. The government also fails to acknowledge the prosecutor's argument that even defense counsel credited the testimony of Smith and Martin. D.E. 287:23-24; see Appellant's Initial Br. at 36, 38-39. These arguments – individually, in combination with one another, and in combination with other vouching remarks[2] – reflect the prosecutor's personal belief

_____

[2]The prosecutor also stated that Martin "came clean and confessed 100 percent and told the police precisely the same story that he told all of you, the same story he (continued...)

14

in the credibility of Smith and Martin, and they incorporate a prejudicial claim that defense counsel shared that belief.  These improper comments warrant relief.

The government argues the prosecutor's improper comments were harmless because some were followed by curative instructions.  To the extent that curative instructions were given, they were ineffective, as explained in Appellant's Initial Brief at 37-39.  The government also argues the improper comments were harmless because Davis's convictions are supported by overwhelming evidence.  But, as discussed in Appellant's Initial Brief at 33-34, 39-40, 43-45, the evidence identifying Davis as a participant in the charged offenses was far from overwhelming.  For these reasons, the exaggerations, shortcuts, and other flaws in the government's closing argument severely prejudiced Davis.

In this case, where the government tried Davis on charges that exposed him to a longer-than-life sentence, the prosecutor's improper closing argument must not be excused.  Davis is entitled to a new trial.

**IV.  THE CUMULATIVE EFFECT AND PREJUDICE ARISING FROM MULTIPLE TRIAL ERRORS COMPELS REVERSAL OF DAVIS'S CONVICTIONS AND A REMAND FOR A NEW TRIAL.**

---

[2](...continued)
has told me 100 times since."  D.E. 287:26.

15

Davis explained in his initial brief that the combination of trial errors and prosecutorial misconduct can deny a defendant a fair trial, regardless of whether the individual errors require reversal on their own.  Appellant's Initial Br. at 42-45. Because Davis suffered severe prejudice from the numerous and pervasive trial errors, this Court must reverse his convictions and remand for a new trial.

### V.    THE DISTRICT COURT VIOLATED DAVIS'S SIXTH AMENDMENT JURY TRIAL RIGHT WHEN IT INCREASED THE MANDATORY MINIMUM PENALTIES FOR EACH OF HIS FIREARMS CONVICTIONS BASED ON JUDICIAL FACT FINDING, ENTITLING HIM TO BE RESENTENCED.

#### A.    The District Court Plainly Erred When it Increased the Mandatory Minimum Penalty for Count 3 Based on its Finding That a Firearm Was Brandished.

The government concedes the district court plainly erred when it increased the mandatory minimum penalty for Count 3 based on a fact that was neither charged in the indictment nor found by the jury.  Appellee's Br. at 43; *see Alleyne v. United States*, 133 S. Ct. 2151 (2013).  The government nevertheless urges the Court not to correct the error.  It argues the evidence that Davis brandished a firearm during the Little Ceasar's robbery was overwhelming, and it therefore "did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings…." Appellee's Br. at 43 (citing *United States v. Cotton*, 535 U.S. 625, 632-33, 122 S.Ct. 1781, 1786,

16

(2002)).  The evidence of brandishing, however, is far from overwhelming.

Therefore, the Court should correct the plain, prejudicial error.

In *Cotton*, the Supreme Court held that raising a defendant's maximum

sentence based on judicial fact-finding constituted plain error that prejudiced the

defendant.  The Court concluded, however, that the error did not warrant relief,

because evidence of the required fact was "overwhelming and essentially

uncontroverted."  *Cotton*, 535 U.S. at 633, 122 S.Ct. at 1786 (internal quotation

marks omitted).  Under those circumstances, the Court concluded the error did not

seriously affect the fairness and integrity of the criminal justice system.  *Id*. at 634,

122 S.Ct. at 1787.  The pertinent fact found by the sentencing judge in *Cotton* was

that the defendants' drug trafficking conspiracy involved at least 50 grams of cocaine

base.  *Id*. at 633, 122 S.Ct. at 1786.  Evidence of that fact was indeed overwhelming.

Trial evidence established that police officers made two seizures, of 380 grams and

51.3 grams, and cooperating co-conspirators testified about witnessing events

involving one-quarter kilogram (250 grams) and one kilogram (1,000 grams) of

cocaine base.  *Id*.

This Court recently applied the *Cotton* analysis in a § 924(c) case.  *United*

*States v. McKinley*, ___ F.3d ___, No. 12-14655, 2013 WL 5615057, at *5 (11th Cir.

Oct. 15, 2013).  In *McKinley*, the Court concluded the sentencing court plainly erred

17

by applying the brandishing enhancement based on judicially-found facts. *Id*. The Court determined the evidence of brandishing was overwhelming, because both a robbery victim and a second eyewitness testified they saw the defendant point or waive a gun while shouting at the victim. *Id*. Having determined the evidence of brandishing was overwhelming and essentially uncontroverted, the Court concluded, "[T]here is no basis for us to conclude the alleged *Alleyne* error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*.

The opposite conclusion is compelled here. In stark contrast to *McKinley*, no witness in this case testified to seeing a gun in Davis's hand during the Little Caesar's robbery. Instead, the government relies on accomplice Willie Smith's testimony that the three robbers took guns to the robbery, and on an eyewitness's testimony that she saw one gun during the robbery. Appellee's Br. at 44-45 (citing D.E. 283:104-05; D.E. 281:102). While the evidence presented at trial was sufficient to show each of the robbers possessed firearms in connection with the Little Caesar's robbery, it did not overwhelmingly prove that Davis brandished a firearm. Thus, failing to correct the plain, prejudicial error would "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *United States v. McKinley*, ___ F.3d ___, No. 12-14655, 2013 WL 5615057, at *5.

18

For these reasons, Davis is entitled to be re-sentenced on Count 3, without the brandishing enhancement.

> **B.    The District Court Erred When it Increased the Mandatory Minimum Penalty for Counts 5, 7, 9, 11, 14 and 17 Based on its Finding That They Were "Second or Subsequent" Convictions.**

Because the indictment did not allege the convictions on Counts 5, 7, 9, 11, 14 and 17 were "second or subsequent" convictions, and the jury did not make such findings, D.E. 39:3-11; D.E. 293, the imposition of enhanced, consecutive 25-year mandatory minimum sentences imposed for these counts is precluded by *Alleyne*. *See* Appellant's Initial Br. at 48-50.

The government notes that *Alleyne* extended the reasoning of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000). *Apprendi* announced the rule that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id*. at 490, 120 S.Ct. at 2362-63. The government relies on the Supreme Court's statement in *Alleyne* that it was not revisiting its earlier holding in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219 (1998), where it created a "narrow exception to [*Apprendi*'s] general rule for the fact of a prior conviction." *Alleyne*, 133 S. Ct. at 2160 n.1.

19

The government's reasoning is flawed. The prior convictions referenced in *Almendarez-Torres* and *Apprendi* were convictions that predated the defendants' convictions that were under review. This distinction is made abundantly clear by the Supreme Court's later decision in *Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254 (2005), which addresses the types of evidence a sentencing court may consider in determining whether a prior conviction qualifies as a predicate for a recidivism enhancement. *See Shepard*, 544 U.S. at 26, 125 S.Ct. at 1263 ("We hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.").

The convictions used to generate Davis's 164-year sentence were concurrent convictions; all were part and parcel of the verdict returned by the jury. Because facts relating to verdicts reached concurrently by the jury in the instant case fall outside the category of facts addressed in *Almendarez-Torres*, they fall beyond the narrow exception carved out by *Almendarez-Torres*.

20

The Court should reject the government's effort to broaden the narrow exception created by *Almendarez-Torres* for judicial fact-finding regarding prior convictions. *Almendarez-Torres* has been widely criticized for several years. *See, e.g., Shepard*, 544 U.S. at 27-28, 125 S.Ct. at 1264 (Thomas, J., concurring in part and concurring in the judgment) ("[A] majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided"); *United States v. Gibson*, 434 F.3d 1234, 1247 (11th Cir. 2006) ("Though wounded, *Almendarez-Torres* still marches on and we are ordered to follow. We will join the funeral procession only after the Supreme Court has decided to bury it."). Because even a majority of Supreme Court justices have questioned the continuing validity of *Almendarez-Torres*, this Court should avoid taking any action that would broaden the reach of its reasoning.

Davis suffered a 122-year error in the calculation of his § 924(c) sentences. Accordingly, his sentences on Counts 3, 5, 7, 9, 11, 14 and 17 must be vacated.

**VI.   DAVIS'S CONSTITUTIONAL GUARANTEE AGAINST CRUEL AND UNUSUAL PUNISHMENT WAS VIOLATED WHEN HE RECEIVED A 162-YEAR SENTENCE OF IMPRISONMENT FOR CRIMES COMMITTED DURING A BRIEF PERIOD WHEN HE WAS A TEENAGER, SUFFERED FROM BIPOLAR DISORDER AND A SEVERE LEARNING DISABILITY, AND HAD NO PRIOR CONVICTIONS.**

In his initial brief, Davis established the unconstitutionality of his mandatory, *de facto* life sentence.  Appellant's Initial Br. at 50-62.

In response, the government notes that proportionality challenges to non-capital sentences imposed on adults have rarely been successful, and it focuses on the nature of Davis's offenses.  Appellee's Br. at 48-51.  The government disregards essential legal principles:  (1) "The concept of proportionality is central to the Eighth Amendment[,]"[3] (2) Eighth Amendment proportionality analysis must take into account the "evolving standards of decency that mark the progress of a maturing society[,]"[4] and (3) "individualized sentencing" is required "for defendants facing the most serious penalties."[5]

The law governing proportionality review of sentences has evolved substantially in the past few years.  Recent Supreme Court opinions establish the vital importance of considering a defendant's emotional maturity and mental condition, as well as the mandatory or discretionary nature of the sentence imposed.  In light of Davis's youth, his cognitive and emotional immaturity, and his mental health challenges, his mandatory longer-than-life sentence merits close review.

---

[3]*Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010).

[4]*Graham*, 130 S. Ct. at 2021 (internal quotation marks are omitted).

[5]*Miller v. Alabama*, 132 S. Ct. 2455, 2460 (2012).

Davis's sentence is unconstitutionally harsh. The district court therefore should be given the opportunity to re-sentence Davis and to impose a sentence that is "proportioned to both the offender and the offense." *Miller v. Alabama*, 132 S. Ct. 2455, 2463 (2012) (internal quotation marks omitted).

## CONCLUSION

Based upon the foregoing argument and citations of authority, the Court should vacate Davis's convictions. Alternatively, the Court should remand for resentencing.

Respectfully submitted,

*/s/ Jacqueline E. Shapiro*
JACQUELINE SHAPIRO, ESQ.
Attorney for Appellant
40 N.W. 3rd Street, PH 1
Miami, Florida 33128
Tel.: (305) 403-8207
Fax: (305) 403-8209

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7). According to the WordPerfect program on which it is written, the numbered pages of this brief contain 4,986 words.

 */s/ Jacqueline E. Shapiro*
Jacqueline Shapiro

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Reply Brief for the Appellant was sent by U.S. Mail this  28th  day of October , 2013 to Kevin Quencer, 99 N.E. 4th Street, Miami, Florida 33132-2111 and Nathan Freed Wessler, ACLU, 125 Broad Street, 18th Floor, New York, New York 10004.

 /s/ Jacqueline E. Shapiro
Jacqueline Shapiro

24