No. 12-12928-EE

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Appellee*,

v.

QUARTAVIOUS DAVIS,

*Defendant-Appellant*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**GOVERNMENT'S PETITION FOR REHEARING EN BANC**

WIFREDO A. FERRER
UNITED STATES ATTORNEY

KATHLEEN M. SALYER
CHIEF, APPELLATE DIVISION

AMIT AGARWAL
ASSISTANT UNITED STATES ATTORNEY

U.S. ATTORNEY'S OFFICE
SOUTHERN DISTRICT OF FLORIDA
99 N.E. 4TH STREET
MIAMI, FLORIDA 33132
(305) 961-9425

Attorneys for Appellee

*United States v. Davis*, Case No. 12-12928-EE

**Certificate of Interested Persons and Corporate Disclosure Statement**

Pursuant to 11th Cir. R. 26.1-1, undersigned counsel for the United States certifies that the following list includes all persons and entities having an interest in the outcome of this case, as well as all persons and entities listed on all certificates filed in the appeal prior to the filing date of this petition for en banc consideration.

Agarwal, Amit

Altman, Roy

American Civil Liberties Union Foundation

American Civil Liberties Union Foundation of Florida, Inc.

Bankston, Kevin

Brown, Hon. Stephen T.

Caruso, Michael

Center for Democracy & Technology

Colan, Jonathan

Crump, Catherine

Davis, Quartavious

Dube, Hon. Robert L.

Electronic Frontier Foundation

Fakhoury, Hanni

Ferrer, Wifredo A.

Fisher, Sylvester

Garber, Hon. Barry L.

Gold, Hon. Alan S.

Golembe, Stephen J.

Hayes, Anne M.

Kayanan, Maria

Korchin, Paul M.

Lenard, Hon. Joan A.

Malone, Omar

Markus, Davis Oscar

Martin, Jahmal A.

Martin, Michael

Mayor's Jewelers

McAliley, Hon. Chris M.

Michaels, Alexander J.

Moss, Jr., Reginald A.

National Association of Criminal Defense Lawyers

Nojeim, Greg

O'Sullivan, Hon. John J.

Palermo, Hon. Peter R.

Perwin, Amanda

Quencer, Kevin S.

Reid, Jamarquis T.

Salyer, Kathleen M.

Schultz, Anne R.

Shapiro, Jacqueline E.

Sibila, Jorge A.

Smith, Willie

Stevenson, Benjamin James

Torres, Hon. Edwin G.

Turnoff, Hon. William C

Ungaro, Hon. Ursula

Wessler, Nathan Freed

White, Hon. Patrick A.

Williams, Hon. Kathleen M.

Wizner, Ben

Zelman, Michael

/s/ *Amit Agarwal*
Amit Agarwal
Assistant United States Attorney

# RULE 35 STATEMENT OF COUNSEL

Pursuant to Fed. R. App. P. 35(b)(1) and 11th Cir. R. 35-5(c), undersigned counsel for the United States makes the following statement:

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court: *Smith v. Maryland*, 442 U.S. 735 (1979); *United States v. Miller*, 425 U.S. 435 (1976).   I also express a belief, based on a reasoned and studied professional judgment, that this appeal involves the following question of exceptional importance:   Whether the government's acquisition of historical cell site records from a cellular telephone service provider pursuant to a court order authorized by the Stored Communications Act, 18 U.S.C. § 2703(c)(1)(B), (d), constitutes an unreasonable search or seizure in violation of the Fourth Amendment.   The panel's ruling that § 2703(d) orders for historical cell site records are *per se* unconstitutional conflicts with the authoritative decision of another federal court of appeals, *see In re Application of the United States*, 724 F.3d 600 (5th Cir. 2013), and implicates "the gravest and most delicate duty" this Court is called on to perform.   *See Northwest Austin Mun. Utility Dist. No. One v. Holder*, 557 U.S. 193, 204-05 (2009) (quotation marks omitted).

/s/ *Amit Agarwal*
Amit Agarwal
Assistant United States Attorney

i

## Table of Contents

**Page:**

Certificate of Interested Persons ....................................................... c-1

Rule 35 Statement of Counsel ............................................................ i

Table of Contents ........................................................................... ii

Table of Citations .......................................................................... iv

Statement of the Issue ..................................................................... 1

Statement of the Case ...................................................................... 1

Reasons for Granting the Petition ...................................................... 4

I.    The Panel's Decision Conflicts With The Supreme Court's Third-Party Rule. .......................................................................................... 4

II.    In Light of Statutory Safeguards Protecting Against the Possibility of Arbitrary Government Action, Any Searches Arguably Arising Out of § 2703(d) Orders For Cell Site Records Are Constitutionally Reasonable. ..................................................................................... 10

III.    The Panel's Holding Creates a New Intercircuit Conflict. ......................... 13

IV.    The Panel's Constitutional Ruling Has Significant Practical Implications. .................................................................................. 14

# Table of Contents

## (continued)

**Page:**

Conclusion ........................................................................................... 15

Certificate of Service ........................................................................... 17

## Table of Citations

**Cases**:                                                                                    **Page**:

*Camreta v. Greene*,

   131 S.Ct. 2020 (2011) ..............................................................................4

*In re Application of the United States*,

   620 F.3d 304 (3d Cir. 2010).....................................................................13

*In re Application of the United States*,

   724 F.3d 600 (5th Cir. 2013)....................................................... i, 7, 13

*In re Grand Jury Proceeding*,

   842 F.2d 1229 (11th Cir. 1988)................................................................5

*Mitchell v. Florida*,

   25 So.3d 632 (Fla. Dist. Ct. App. 2010) ...............................................14

*Northwest Austin Mun. Utility Dist. No. One v. Holder*,

   557 U.S. 193 (2009) .................................................................................. i

*Rehberg v. Paulk*,

   611 F.3d 828 (11th Cir. 2010)............................................................5, 7

*Riley v. California*,

   134 S.Ct. 2473 (2014) ..............................................................................9

*Smarr v. Georgia,*,

   732 S.E.2d 110 (Ga. Ct. App. 2012)......................................................14

## Table of Citations (Continued)

<u>**Cases**</u>:                                                                                                  <u>**Page**</u>:

*Smith v. Maryland*,

   442 U.S. 735 (1979) ........................................................................ i, 5, 6

*United States v. Jones*,

   132 S.Ct. 945 (2012) ............................................................ 3, 8, 10, 13

*United States v. Karo*,

   468 U.S. 705 (1984) .................................................................... 10, 13

*United States v. Knotts*,

   460 U.S. 276 (1983) ..........................................................................10

*United States v. Miller*,

   425 U.S. 435 (1976) .................................................................. i, 5, 12

*United States v. R. Enterprises*,

   498 U.S. 292 (1991) ..........................................................................12

*United States v. Watson*,

   423 U.S. 411 (1976) ..........................................................................11

*Wash. State Grange v. Wash. State Republican Party*,

   552 U.S. 442 (2008) ......................................................................9, 11

**Table of Citations (Continued)**

**Statutes & Other Authorities:**                                    **Page:**

11th Cir. R. 35-5 ....................................................................................... i

18 U.S.C. § 2701 ........................................................................................1

18 U.S.C. § 2703............................................................................. i, *passim*

Fed. R. App. P. 35................................................................................. i, 4

**Other Authorities**

Orin S. Kerr, *A User's Guide to the Stored Communications Act*,

  72 Geo. Wash. L. Rev. 1208 (2004) ....................................................12

## Statement of the Issue

Whether the Stored Communications Act (SCA), 18 U.S.C. § 2701 et seq., is categorically unconstitutional insofar as it authorizes the government to acquire historical cell site records from a cellular telephone service provider pursuant to a court order issued under § 2703(c)(1)(B) & (d).

## Statement of the Case

1.   In 2010, Quartavious Davis and various accomplices committed seven armed robberies in South Florida.   A:3-4.[1]   Davis's DNA was found in two of the getaway cars used by the robbers, and security videos showed a man matching his description participating in four of the robberies. A:4. Two accomplices confirmed Davis's role in the robberies and identified him on the security videos. A:4.

2.   During its investigation, the government obtained a court order requiring MetroPCS to disclose historical cell site records for a phone used by Davis during the 67-day period spanning the seven robberies (DE266-1).   The order was issued pursuant to the SCA, which provides that a federal or state governmental entity may require a telephone service provider to disclose non-content subscriber records if a court of competent jurisdiction finds "specific and articulable facts showing that there are reasonable grounds to believe" that the records sought "are relevant and material to an ongoing criminal investigation."   *Id.*  § 2703(c)(1)(B), (d).   The

---

[1] Citations ("A:") are to the addendum provided with this petition.

records obtained showed that, at or near the times of six robberies, a cell phone used by Davis made or took calls routed by towers in the vicinity of the crime.   A:4-5.

3.   Davis was charged with various offenses related to the robberies (DE39). One day before trial, Davis filed a motion to suppress all cell site records obtained without a warrant, arguing that "long term location tracking by electronic means constitute[s] a Fourth Amendment search requiring a finding of probable cause and a warrant" (DE272:6).   The district court orally denied Davis's motion to suppress (DE277:45), and cell site records for the phone tied to Davis were introduced at trial (DE283:204-237; DE285:19-52).   The jury found Davis guilty on all counts (DE293), and he was sentenced to a prison term of 1,941 months (DE342).

4.   On appeal, Davis raised six claims.   Br. 1.   As relevant here, Davis renewed his contention that "long term location tracking by electronic means constitutes a Fourth Amendment search requiring a finding of probable cause and a warrant."   Br. 32.   Neither Davis nor his amicus argued that § 2703(d) orders for cell site records (hereinafter "§ 2703(d) orders") are categorically unconstitutional.

A three-judge panel of this Court affirmed in part and vacated in part. A:2.[2] The panel found that the SCA authorized the court order requiring MetroPCS to disclose Davis's cell site records.   A:24-25.   In the panel's view, however, the government violated the Fourth Amendment by acquiring such records without a

---

[2]  The Court vacated Davis's sentence, finding one particular sentencing enhancement invalid.   A:32.   This petition does not address that ruling.

warrant. A:23. Hence, the panel necessarily concluded that the SCA is unconstitutional insofar as it authorizes the government to obtain court orders for historical cell site records under § 2703(c)(1)(B) & (d).

The panel deemed *United States v. Jones*, 132 S.Ct. 945 (2012), "the most relevant Supreme Court precedent." A:9. The panel acknowledged that the holding of *Jones* was based on a trespass involving the warrantless placement of a GPS device on the suspect's vehicle, and it recognized that in this case "there was no GPS device, no placement, and no physical trespass." A:16. Nevertheless, the panel found *Jones* "instructive," particularly since five of the concurring Justices expressed the view that "long-term monitoring" with a GPS device constitutes a Fourth Amendment search. A:16-18.

The panel recognized that, unlike the GPS data in *Jones*, Davis's records were obtained from a third-party service provider. A:21-22 (citing cases holding that a customer does not have a reasonable expectation of privacy in third-party business records). While noting that the government's reliance on the third-party doctrine was "not without persuasive force," however, the panel found that doctrine inapplicable because, in its view, it is unlikely that cell phone users know that their service providers store cell site data. A:21-22.

Although Davis argued only that "long term location tracking" constitutes a Fourth Amendment search, the panel made no mention of the 67-day time span at

3

issue in Davis's as-applied challenge.   Instead, the panel held that § 2703(d) orders for cell site records always implicate the Fourth Amendment because "cell site location information is within the subscriber's reasonable expectation of privacy." A:23.   Without further analysis, the Court then stated that "[t]he obtaining of that data without a warrant *is a Fourth Amendment violation*."   A:23 (emphasis added).

Notwithstanding its constitutional holding, the panel affirmed Davis's convictions based on the good-faith exception to the exclusionary rule.   A:25.   The Court did not explain why, in light of that disposition, it elected to pass on the constitutionality of the SCA in the first place.   Nor did the panel say why, even if it was appropriate to adjudicate the merits of Davis's as-applied challenge, it reached out to resolve a quasi-facial challenge not raised by Davis or his amicus.[3]

### Reasons for Granting the Petition

### I.    The Panel's Decision Conflicts With The Supreme Court's Third-Party Rule.

A. The panel's "hold[ing] that cell site location information [in third-party business records] is within the subscriber's reasonable expectation of privacy,"

---

[3]  Because the panel's decision bars the use of § 2703(d) orders in future cases, the government seeks rehearing en banc even though Davis's convictions were affirmed.   *See* Fed. R. App. P. 35(b) (providing that "[a] party may petition for hearing or rehearing en banc," and omitting any exception for prevailing parties); *cf. Camreta v. Greene*, 131 S.Ct. 2020, 2030 (2011) ("[t]he constitutional determinations that prevailing parties ask us to consider in these cases are not mere dicta or 'statements in opinions,'" but "rulings that have a significant future effect on the conduct of public officials . . . and the policies of [their] government units").

A:23, cannot be reconciled with *United States v. Miller*, 425 U.S. 435 (1976), *Smith v. Maryland*, 442 U.S. 735 (1979), and this Court's related precedents. *E.g.*, *Rehberg v. Paulk*, 611 F.3d 828, 842-43 (11th Cir. 2010). In *Miller*, the Court held that bank customers have "no protectable Fourth Amendment interest" in "the business records of the banks," including checks, deposit slips, and financial statements. 425 U.S. at 436-38. Similarly, the Court in *Smith* held that a phone customer lacked a legitimate expectation of privacy in phone company records of the numbers dialed from his phone. 442 U.S. at 744-46. Those holdings are consistent with the plain text of the Fourth Amendment, which protects "[t]he right of the people to be secure in *their* . . . papers," (emphasis added), not the papers of *others*. Accordingly, it has long been settled that "an individual has no claim under the fourth amendment to resist the production of business records held by a third party." *In re Grand Jury Proceeding*, 842 F.2d 1229, 1234 (11th Cir. 1988).

That commonsense principle applies here. Like the bank customer in *Miller* and the phone customer in *Smith*, Davis sought to suppress "business records" over which he could "assert neither ownership nor possession." *See Miller*, 425 U.S. at 440. Those records were generated by MetroPCS, stored on its own premises, and subject to its control (DE283:205-07). Moreover, Davis could not reasonably have been surprised that MetroPCS kept such records, since they "pertain to transactions to which the [company] itself was a party." *Id.* at 441. In particular, calls to and

from Davis's phone were routed through MetroPCS towers, and those towers must be used for a phone "to work"—"to get a call out or to receive a call" (DE283:220).

Judicial speculation that most customers are "unlikely" to be "aware that their cell phone providers collect and store historical location information," A:22, does not provide a persuasive basis for not applying the third-party rule. In *Smith*, the Court assumed that customers know of undisputed and readily ascertainable facts about technologies that phone companies use to connect calls, document charges, and assist in law-enforcement investigations. *See* 442 U.S. at 742-43. There is no reason to suppose that *Smith*'s methodology should not apply just because cell site records may also be used to discern general vicinity information. Indeed, toll records of the kind at issue in *Smith* may be used to glean even more precise location data than cell tower records—for example, in the case of a stationary phone.

Even assuming Davis was not *subjectively* aware that MetroPCS stored his cell site data, such ignorance could not be deemed *objectively* reasonable. *See Smith*, 442 U.S. at 743-44. Based on undisputed record evidence and readily ascertainable facts of the kind relied upon in *Smith*, it is clear that (1) cell site records contain information necessarily generated by a service provider in order to route incoming and outgoing calls to a mobile phone; (2) such records are made, kept, owned, and controlled by the company; (3) companies keep such records for billing and other legitimate business purposes; (4) service contracts and privacy policies

ordinarily warn subscribers that such records are kept and may be disclosed to the government; and (5) subscribers do not even know of the particular location data collected in such records (i.e., the location of the tower used to route a call, as opposed to the user's actual location) (DE283:205-07, 220, 237).  *See In re Application of the United States*, 724 F.3d 600, 611-13 (5th Cir. 2013).   In light of such facts, Davis did not meet his burden, *see Rehberg*, 611 F.3d at 842, of establishing a justifiable privacy expectation in MetroPCS's cell site records.

In short, Davis claims that he has a constitutionally cognizable privacy interest in business records that he did not make and has never seen or kept, and that contain information he has never known.   That claim fails on its own terms, and it cannot be reconciled with the principles enunciated in *Smith* and *Miller*.   The panel's basis for distinguishing those cases is not persuasive.   As *Smith* made clear, the public should not be presumed ignorant of undisputed, regularly disclosed, and readily ascertainable facts; such ignorance at any rate is not objectively reasonable; and a reviewing court's casual presumption of pervasive and persistent ignorance does not supply a stable or satisfying foundation for the formulation of Fourth Amendment rights.   The panel's contrary reading of *Smith* finds no support in this Court's cases,[4] and its novel approach to the third-party doctrine threatens to

---

[4] This Court has had ample occasion to apply the third-party doctrine.  *See, e.g.*, *Rehberg*, 611 F.3d at 842-43.   Nevertheless, the panel did not cite any Eleventh Circuit case in discussing Davis's Fourth Amendment claim.   *See* A:7-23.

introduce substantial uncertainty into an important area of Fourth Amendment law.

B.  *United States v. Jones*, 132 S.Ct. 945 (2012), does not take Davis's claim outside the ambit of the third-party doctrine.  As the panel recognized, the holding of *Jones* has no application here, since this case does not involve any physical incursion into a constitutionally protected area.  Moreover, the police in *Jones* did not obtain location data from a third-party service provider, and the Court gave no indication that the third-party rule does not apply to such data.

The concurring opinions in *Jones* do not support the panel's reasoning. Only one of the justices suggested that *the Supreme Court* should "reconsider" its third-party rule, and she did not say or imply that *the courts of appeals* are not bound by that rule in the interim.  *See* 132 S.Ct. at 957 (Sotomayor, J.).  Moreover, the congressionally unregulated and judicially unsupervised law-enforcement surveillance disapproved by the *Jones* concurrences is worlds apart from the carefully crafted statutory scheme at issue here.  Indeed, four of the five concurring justices went out of their way to encourage legislative solutions of the kind struck down in this case.  *See id.* at 964 (Alito, J., concurring in the judgment) ("In circumstances involving dramatic technological change, the best solution to privacy concerns may be legislative.  A legislative body is well situated to gauge changing public attitudes, to draw detailed lines, and to balance privacy and public safety in a

comprehensive way.").[5]

C.   Even assuming that Davis has a reasonable expectation of privacy in cell site records embracing a period of 67 days, the panel erred in holding that cell site information is always within the subscriber's expectation of privacy.   Neither Davis nor his amicus raised any such claim.   By reaching out to resolve that quasi-facial challenge, the panel violated a "fundamental principle of judicial restraint" holding that "courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied," *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (quotation marks omitted).

On the merits, it is not persuasive to hold that cell site data is always within the subscriber's reasonable expectation of privacy—no matter whether the information in question pertains to a single phone call spanning a few seconds or thousands of phone calls spanning a few years, no matter whether the subscriber makes a call in plain view in a public place or from the privacy of his own home, and no matter how explicit the warning incorporated into the customer's service contract.   At a minimum, the panel's contrary position is in substantial tension with

---

[5] The Court's recent decision in *Riley v. California*, 134 S.Ct. 2473 (2014), does not help Davis's cause.   *Riley* holds that the search-incident-to-arrest exception does not extend to the search of a cell phone seized from an arrestee.   *Id.* at 2485.   *Riley* involved a conceded search of information found on the arrestee's phone, *id.* at 2492-93, not business records obtained from a third party.

9

established Fourth Amendment principles.  For example, it is settled law that the police may monitor the whereabouts of suspects travelling in public areas over relatively short periods of time with the aid of electronic devices *surreptitiously* installed in items those suspects obtained from third parties.  *See United States v. Karo*, 468 U.S. 705, 707, 712-14 (1984); *United States v. Knotts*, 460 U.S. 276, 281-85 (1983); *see also Jones*, 132 S.Ct. at 952 ("Karo accepted the container as it came to him, beeper and all, and was therefore not entitled to object to the beeper's presence, even though it was used to monitor the container's location" without his knowledge); *id.* at 964 (Alito, J., concurring in the judgment) (citing *Knotts*, 460 U.S. at 281-82, for the proposition that "relatively short-term monitoring of a person's movements on public streets accords with expectations of privacy that our society is prepared to recognize as reasonable").  *A fortiori*, the police should be able to obtain the same kind of location information from cell-phone-related technologies of which phone users are *expressly and unambiguously* warned.

## II.    In Light of Statutory Safeguards Protecting Against the Possibility of Arbitrary Government Action, Any Searches Arguably Arising Out of § 2703(d) Orders For Cell Site Records Are Constitutionally Reasonable.

Assuming *arguendo* that § 2703(d) orders for cell site records *always implicate* the Fourth Amendment, the panel should not have presumed that such orders *always violate* the Fourth Amendment's proscription against unreasonable searches and seizures.  In holding that "[t]he obtaining of [cell site] data without a

10

warrant is a Fourth Amendment violation," A:23, the panel not only formulated another "rule of constitutional law broader than [was] required by the precise facts to which it [was] to be applied," *Wash. State* Grange, 552 U.S. at 450.   It also failed to apply the "strong presumption of constitutionality due to an Act of Congress, especially when it turns on what is 'reasonable'" within the meaning of the Fourth Amendment.   *United States v. Watson*, 423 U.S. 411, 416 (1976) (quotation marks omitted).   Indeed, the panel applied the exact opposite presumption.   *See* A:8, 23.

At any rate, more careful consideration is warranted before this Court strikes down § 2703(d) in all of its applications to cell site records.   In their briefs to the panel, the parties and appellant's amicus focused on the first prong of the Fourth Amendment inquiry—i.e., whether § 2703(d) orders implicate the Fourth Amendment by impinging on a customer's reasonable expectation of privacy. Accordingly, the panel understandably did not address the second prong of the analysis—whether any search that took place was reasonable—in resolving this particular case.   In view of the strong presumption of constitutionality due to an Act of Congress, however, this Court should not hold that § 2703(d) orders are *per se* unconstitutional without carefully considering that crucial and distinct issue.

Properly understood, § 2703(d) satisfies the core reasonableness requirement of the Fourth Amendment.   A court order under § 2703(d) operates as a judicial subpoena:   It compels the recipient to produce specified information; the recipient

may move to quash; and its enforcement is subject to the supervision of the issuing court.  *See* § 2703(d).  Subpoenas seeking third-party records germane to an ongoing criminal investigation are not generally subject to the warrant requirement.  *See, e.g.*, *Miller*, 425 U.S. at 445-46.  Nor would it make sense to hold that an investigative subpoena compelling a third party's production of relevant documentary evidence may issue only upon a showing of probable cause, since "the very purpose of requesting the information is to ascertain whether probable cause exists."  *United States v. R. Enterprises*, 498 U.S. 292, 297 (1991).

Congress not only relied on those well-settled principles in enacting the SCA; it went well beyond the constitutional prerequisites for obtaining third-party business records via the issuance of compulsory process.[6]  In particular, Congress (1) placed a neutral and detached magistrate between law-enforcement officers and the records sought; (2) made such records available only if that judicial officer finds specific and articulable facts showing that there are reasonable grounds to believe the records sought are relevant and material to an ongoing criminal investigation; and (3) barred improper disclosures of records so obtained.  *See* §§ 2703(d),

---

[6]  *See* Orin S. Kerr, *A User's Guide to the Stored Communications Act*, 72 Geo. Wash. L. Rev. 1208, 1211, 1212-13, 1219 (2004) (explaining that "the Fourth Amendment generally allows the government to issue a grand jury subpoena compelling the disclosure of information and property, even if it is protected by a Fourth Amendment 'reasonable expectation of privacy,'" noting that the SCA "confers *greater* privacy protection" than customer records ordinarily obtainable by subpoena, and describing a court order issued under § 2703(d) as "something like a mix between a subpoena and a search warrant") (emphasis added).

2707(g).  Although Congress did not require a warrant, "[t]he primary reason for the warrant requirement is to interpose a 'neutral and detached magistrate' between the citizen and 'the officer engaged in the often competitive enterprise of ferreting out crime,'" *Karo*, 468 U.S. at 717, and the SCA does just that.

In sum, § 2703(d) comfortably fits within an established exception to the warrant requirement.  Indeed, that provision is more protective of individual privacy than other commonly accepted, judicially approved, and practically indistinguishable forms of compulsory process.  At a minimum, this Court should have the benefit of full briefing before holding that an investigative tool created by Congress is constitutionally unreasonable in all of its applications.[7]

## III.    The Panel's Holding Creates a New Intercircuit Conflict.

The panel's holding that § 2703(d) orders for cell site data are *per se* unconstitutional creates a new conflict between the federal courts of appeals.  *See In re Application of the United States*, 724 F.3d 600, 615 (5th Cir. 2013) ("Section 2703(d) orders to obtain *historical* cell site information . . . are not categorically unconstitutional.") (emphasis in original); *see also In re Application of the United States*, 620 F.3d 304, 313, 319 (3d Cir. 2010) ("hold[ing] that CSLI from cell phone calls is obtainable under a § 2703(d) order and that such an order does not require the

---

[7] Alternatively, if this Court denies rehearing en banc, the panel might consider amending its opinion to clarify that it does not decide whether § 2703(d) orders for cell site data are constitutionally reasonable.  *Cf. Jones*, 132 S.Ct. at 954.

traditional probable cause determination," although "the statute as presently written gives the [magistrate] the option to require a warrant showing probable cause" in limited circumstances).   It also conflicts with the opinions of several state appellate courts in this Circuit.   *E.g.*, *Smarr v. Georgia*, 732 S.E.2d 110, 118 & nn. 24-25 (Ga. Ct. App. 2012); *Mitchell v. Florida*, 25 So.3d 632, 635 (Fla. Dist. Ct. App. 2009).   Hence, federal prosecutors in this Circuit are now operating under a different legal rule than their counterparts in every other part of the country, and state prosecutors in this Circuit are now subject to two incompatible legal regimes.

At a minimum, this Court should confront the logic of the Fifth Circuit's contrary holding before creating an avoidable circuit split with serious nationwide implications.   The panel's rationale for refusing to consider the Fifth Circuit's reasoning—because that case arose in a different "context," A:10—is unpersuasive. That court "clearly held" that § 2703(d) orders are "not 'per se unconstitutional,'" *id.*, and that is the exact same issue the panel needlessly reached out to resolve.

## IV.  The Panel's Constitutional Ruling Has Significant Practical Implications.

The panel's ruling substantially burdens important governmental interests. Law-enforcement agencies have long used cell site location data to investigate the full gamut of state and federal crimes.   Such records are often particularly valuable during the early stages of an investigation, when the police lack probable cause but reasonably believe that the requested records will shed light on the crime under

investigation.   In such cases, § 2703(d) orders—like other forms of compulsory process not subject to the warrant requirement—help to deflect suspicion from the innocent, build probable cause against the guilty, aid in the search for truth, and judiciously allocate scarce investigative resources.

Those real-world benefits come at a negligible cost to individual privacy. Unlike GPS data, historical cell site records show only that a phone was in the vicinity of a particular cell tower at the beginning or end of a call.   Hence, such records cannot be used to precisely or continuously track a phone's movements.   In addition, the vicinity information revealed is useful only if one already has a point of reference—in this case, for example, the robbery locations—and the records themselves do not provide a basis for ascertaining that point of reference.   Most importantly, any sensitive information theoretically discoverable from such records is subject to statutory safeguards carefully crafted to avoid improper invasions of individual privacy.   Those protections amply accommodate any diminished expectation of privacy Davis may assert in MetroPCS's records.

In sum, the panel's constitutional ruling deprives law-enforcement authorities of an important investigative tool, without yielding any appreciable real-world privacy gains by way of compensation.

## Conclusion

This Court should vacate the panel's decision and rehear the case en banc.

Respectfully submitted,

Wifredo A. Ferrer
United States Attorney

By:    /s/ *Amit Agarwal*
       Amit Agarwal
       Assistant United States Attorney
       99 N.E. 4th Street, Suite 517
       Miami, FL 33132
       (305) 961-9425
       Amit.Agarwal@usdoj.gov

Kathleen M. Salyer
Chief, Appellate Division

Of Counsel

## Certificate of Service

I hereby certify that fifteen copies of the foregoing petition for rehearing en banc were mailed to the Court of Appeals via Federal Express this 1st day of August, 2014. I also certify that, on the same day, the foregoing petition was electronically filed and served on all counsel of record via CM/ECF.

/s/ *Amit Agarwal*
Amit Agarwal
Assistant United States Attorney

*ab*

# ADDENDUM

*United States v. Quartavious Davis*,
__ F.3d __, 2014 WL 2599917
(11th Cir. June 11, 2014)

[PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

_____

No. 12-12928

_____

D.C. Docket No. 1:10-cr-20896-JAL-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

QUARTAVIOUS DAVIS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 11, 2014)

Before MARTIN, DUBINA, and SENTELLE,* Circuit Judges.


_____

*Honorable David Bryan Sentelle, United States Circuit Judge for the District of
Columbia, sitting by designation.

SENTELLE, Circuit Judge:

Appellant Quartavius Davis[1] was convicted by a jury on several counts of Hobbs Act robbery, 18 U.S.C. § 1951(b)(1), (3), conspiracy, 18 U.S.C. § 1951(a), and knowing possession of a firearm in furtherance of a crime of violence, 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. The district court entered judgment on the verdict, sentencing Davis to consecutive terms of imprisonment totaling 1,941 months. Davis appeals, assigning several grounds for reversal. His principal argument is that the court admitted location evidence based on stored cell site information obtained by the prosecution without a warrant, in violation of his Fourth Amendment rights. He assigns other grounds of error going to prosecutorial misconduct, evidentiary sufficiency, and sentencing. For the reasons set forth below, we hold that there is no reversible error, although we do find merit in one argument that the sentence was improperly enhanced. We therefore affirm the judgment below in large part, but vacate a sentencing enhancement regarding "brandishing" a firearm.

## BACKGROUND

On February 18, 2011, a grand jury for the Southern District of Florida returned a seventeen-count indictment against Davis and five co-defendants. Davis was named as a defendant in sixteen of the seventeen counts. Generally, the

---

[1] The Presentence Investigation Report notes that "Quartavius" is the correct spelling of appellant's first name, despite the spelling in the caption. PSR at 5.

indictment charged violations of the Anti-Racketeering Act, 18 U.S.C. § 1951 (Hobbs Act), and conspiracy to violate the Hobbs Act.  More specifically, the indictment charged Davis with conspiracy to engage in Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Counts 1, 15); Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2 (Counts 2, 4, 6, 8, 10, 13, 16); and with knowingly using, carrying, and possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Counts 3, 5, 7, 9, 11, 14, 17).

As part of the pretrial proceedings, Davis moved to suppress electronic location evidence that the government had obtained "without a warrant," claiming that the obtaining of that evidence violated his Fourth Amendment rights.  The district court denied the motion.  Davis renewed the motion during trial, and the district court again denied it.  These rulings give rise to Davis's principal claim on appeal, which we will discuss further below.  The prosecution proceeded to offer evidence of two conspiracies to commit Hobbs Act robbery and that Davis was part of each conspiracy.  The prosecution further presented evidence that the conspirators committed such robberies.

During the trial, one member of each conspiracy testified for the United States.  Willie Smith ("Smith") testified as to the first conspiracy, encompassing six robberies at commercial establishments including a Little Caesar's restaurant, an Amerika Gas Station, a Walgreens drug store, an Advance Auto Parts store, a

Universal Beauty Salon, and a Wendy's restaurant.  Michael Martin ("Martin")

testified as to the second conspiracy, encompassing the robbery of a Mayor's

Jewelry store.  Smith and Martin testified that Davis was involved in each robbery,

where they wore masks, carried guns, and took items such as cigarettes and cash.

Additionally, an eyewitness, Edwin Negron, testified regarding Davis's

conduct at Universal Beauty Salon and the adjacent Tae Kwon Do studio.  He

testified that Davis pointed a gun at his head, pushed a 77 year-old woman and

Negron's wife to the ground, and took several items from Negron and others.

Another eyewitness, Antonio Brooks, testified that he confronted Davis and his

accomplices outside the Wendy's restaurant after that robbery and tried to write

down the license plate of their getaway car.  Brooks testified that Davis fired his

gun at him, and that he returned fire towards the car.

Beyond the testimony, the government produced additional evidence.

Surveillance videos showed a man matching Davis's description participating in

the robberies at Walgreens, Advance Auto Parts, Wendy's, and Mayor's Jewelry.

Smith and Martin identified Davis on the videos.  DNA shown to be Davis's was

recovered from the getaway car used to flee the scene of the Universal Beauty

Salon robbery and the Mayor's Jewelry store robbery.

The prosecution also offered records obtained from cell phone service

providers evidencing that Davis and his co-defendants had placed and received cell

phone calls in close proximity to the locations of each of the charged robberies around the time that the robberies were committed, except for the Mayor's Jewelry store robbery. Davis preserved his objection to the cell phone location evidence and his claim that the government's obtaining such evidence without a warrant issued upon a showing of probable cause violated his rights under the Fourth Amendment.

The court submitted all counts to the jury. During jury arguments, the prosecutor made several questionable statements, including some apparently vouching for the credibility of the government's witnesses. Upon objections by the defense, the court instructed the jury to disregard the statements by the prosecution. The jury returned a verdict of guilty on all counts.

Subsequently, the district court sentenced Davis on all counts, and conducted a careful sentencing analysis on the record. Of particular note to the issues in this appeal, in the sentence on Count 3, which charged the use and carrying of a firearm during and in relation to a crime of violence, the court imposed a seven-year statutory mandatory enhancement pursuant to 18 U.S.C. § 924(c)(1)(A)(ii), which provides for such enhancement where "the firearm is brandished . . . ." On Counts 5, 7, 9, 11, 14, and 17, which also charged the defendant with using and carrying a firearm during and in relation to a crime of violence, the court imposed a "second or subsequent" enhancement required by 18

U.S.C. § 924(c)(1)(C)(i), as each of these offenses was subsequent to the similar violation charged in Count 3. Noting that 18 U.S.C. § 924(c)(1)(D)(ii) requires consecutive sentences, the court imposed a total term of imprisonment of 1,941 months, approximately 162 years.

Davis raises several allegations of error on appeal. First, he argues that the district court's denial of his motion to suppress the cell site location information and the admission of that evidence violated his constitutional rights under the Fourth Amendment. Second, he argues that the prosecutor's misconduct during closing argument rendered his trial unfair, entitling him to a new trial. Third, he raises sentencing arguments, contending that the district court's applications of the mandatory penalty for second or subsequent offenses and for brandishing a firearm on Count 3 were in violation of his Sixth Amendment rights, and that the 162-year sentence of imprisonment constituted a cruel and unusual punishment in violation of his Eighth Amendment rights. Further, he raises an issue as to the sufficiency of evidence on the aiding and abetting the use of a firearm charge in connection with a crime of violence in Count 17. Finally, he makes a broad challenge that "the cumulative effect and prejudice arising from multiple trial errors compels reversal." We consider each of the listed arguments in turn.

I. *Fourth Amendment Issue*

Davis's Fourth Amendment argument raises issues of first impression in this circuit, and not definitively decided elsewhere in the country. The evidence at issue consists of records obtained from cell phone service providers pursuant to the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2703(c) and (d). Under that Act, the government can obtain from providers of electronic communication service records of subscriber services when the government has obtained either a warrant, § 2703(c)(A), or, as occurred in this case, a court order under subsection (d), *see* § 2703(c)(B). The order under subsection (d) does not require the government to show probable cause.

The evidence obtained under the order and presented against Davis in the district court consisted of so-called "cell site location information." That location information includes a record of calls made by the providers' customer, in this case Davis, and reveals which cell tower carried the call to or from the customer. The cell tower in use will normally be the cell tower closest to the customer. The cell site location information will also reflect the direction of the user from the tower. It is therefore possible to extrapolate the location of the cell phone user at the time and date reflected in the call record. All parties agree that the location of the user will not be determined with pinpoint precision, but the information is sufficiently specific that the prosecutor expressly relied on it in summing up to the jury in

arguing the strength of the government's case for Davis's presence at the crime scenes. Indeed, it is not overstatement to say that the prosecutor stressed that evidence and the fact that the information reflected Davis's use of cell phone towers proximate to six of the seven crime scenes at or about the time of the Hobbs Act robberies.

Davis objected to the admission of the location information in the district court and now argues to us that the obtaining of that evidence violated his constitutional rights under the Fourth Amendment. That Amendment, of course, provides that "no Warrants shall issue, but upon probable cause, supported by Oath or Affirmation . . . ." U.S. CONST. AMEND. IV. It is a "basic principle of Fourth Amendment law" that searches and seizures without a warrant "are presumptively unreasonable." *See, e.g.*, *Groh v. Ramirez*, 540 U.S. 551, 559 (2004). The SCA does provide for governmental entities requiring records from communication service providers by warrant under subsection (c)(A). However, as noted above, the prosecution obtained the evidence against Davis, not by warrant under subsection (c)(A), but by order under subsection (d). As further noted above, that section does not require probable cause, but only a showing "that there are *reasonable grounds to believe* that the . . . records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d) (emphasis added). Davis contends that the obtaining of the evidence required a

warrant upon probable cause.  The government argues that the evidence is not covered by the Fourth Amendment and was properly obtained under a court order.

As we suggested above, the question whether cell site location information is protected by the Fourth Amendment guarantees against warrantless searches has never been determined by this court or the Supreme Court.  Two circuits have considered the question, but not in the context of the use of the evidence in a criminal proceeding.  Also, one of those opinions issued before the Supreme Court's decision in *United States v. Jones*, ___ U.S. ___ , 132 S. Ct. 945 (2012), the most relevant Supreme Court precedent.

The Third Circuit in *In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n. Serv. to Disclose Records to Gov't*, 620 F.3d 304, 317–18 (3d Cir. 2010), heard the government's appeal from an order of a magistrate judge declining to direct a service provider to furnish information by order under subsection (d) and requiring instead that the government pursue a warrant upon probable cause under subsection (c)(A).  Briefly put, that circuit did vacate the magistrate judge's denial, but opined that the magistrate judge in appropriate circumstances might "require a warrant showing probable cause . . . ." *Id.* at 319.

The Fifth Circuit, in *In re Application of U.S. for Historical Cell Site Data*, 724 F.3d 600, 612 (5th Cir. 2013), reviewed an application in a similar posture.  In

the Fifth Circuit case, the district court had denied orders for which the

government had applied under subsection (d).  The Fifth Circuit clearly held that

compelling production of the records on the statutory "reasonable grounds" basis is

not "per se unconstitutional."  *Id.* at 602.  We will not review at this point the

reasoning of either of our sibling circuits, given that the context of the cases is

different, and one of those circuits opined before issuance of *Jones*, the most

instructive Supreme Court decision in the field.

While *Jones* is distinguishable from the case before us, it concerned location

information obtained by a technology sufficiently similar to that furnished in the

cell site location information to make it clearly relevant to our analysis.  The

present case, like *Jones*, brings to the fore the existence of two distinct views of the

interests protected by the Fourth Amendment's prohibition of unreasonable

searches and seizures.  The older of the two theories is the view that the Fourth

Amendment protects the property rights of the people.  This view is sometimes

referred to as the "trespass" theory and "our Fourth Amendment jurisprudence was

tied to common-law trespass, at least until the latter half of the 20th century."

*Jones*, 132 S. Ct. at 949 (collecting authorities).  However, in the twentieth

century, a second view gradually developed:  that is, that the Fourth Amendment

guarantee protects the privacy rights of the people without respect to whether the

alleged "search" constituted a trespass against property rights.

10

The privacy theory began to emerge at least as early as *Olmstead v. United States*, 277 U.S. 438 (1928).  In *Olmstead*, the government had obtained conversations of the defendants by warrantless wiretap.  Because the wires that were tapped were outside the premises of the defendants, the majority of the court, relying on the trespass theory, held that the tapping did not constitute a search within the meaning of the Fourth Amendment.  Justice Brandeis, in dissent, expressly viewed the provision against unlawful searches as protecting against "invasion of 'the sanctities of a man's home and the *privacies of life*.'"  *Id.* at 473 (Brandeis, J., dissenting) (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886) (emphasis added)).  Despite Justice Brandeis's criticism, the trespass theory continued to hold sway.

In *Goldman v. United States*, 316 U.S. 129 (1942), the petitioners complained against the government's electronically overhearing conversations in petitioners' offices by the warrantless placement of a listening device on an exterior wall.  Because the Court, in what might be described as an esoteric discussion of the placement of the device, concluded that the interception of petitioners' conversation was not aided by trespass, there was no Fourth Amendment violation.  However, the privacy theory again advanced in dissent.  Chief Justice Stone and Justice Frankfurter, in a two-sentence separate opinion, simply stated their agreement with the dissent in *Olmstead*, and lamented the

11

unwillingness of the majority to overrule that case.  Justice Murphy dissented

separately, expressly referencing the "right of personal privacy guaranteed by the

Fourth Amendment."  *Id.* at 136 (Murphy, J., dissenting).

The minutiae involved in the application of the trespass theory to the world

of electronic information stood out sharply in *Silverman v. United States*, 365 U.S.

505 (1961).  In *Silverman*, police officers testified to the contents of conversations

upon which they eavesdropped.  The Supreme Court noted the argument of the

defendants that the rationale of *Olmstead* should be reexamined, but concluded that

such a reexamination was unnecessary given that the conversations were overheard

by means of a "spike mike" driven into the wall of the defendant's premises and

making contact with a heat duct therein so as to use the entire heating system as a

listening device.  Because that penetration constituted a trespass, the Court did not

deem it necessary to reconsider its earlier rationale.

Finally, in *Katz v. United States*, 389 U.S. 347 (1967), the majority of the

Supreme Court accepted and relied upon the privacy theory to hold interception of

a conversation unconstitutional even in the absence of a physical trespass.  In

*Katz*—on facts somewhat reminiscent of *Goldman*—the Court considered evidence

obtained by FBI agents through a device attached to the exterior of a telephone

booth but not penetrating the wall.  As the government argued that there was no

Fourth Amendment violation because there was no trespass, the Court squarely

considered the dichotomy between the property and privacy protection theories.

The Court held that such a warrantless interception did violate privacy interests

protected by the Fourth Amendment.  Indeed, it did so construing language from

*Silverman* as already establishing "that the Fourth Amendment governs not only

the seizure of tangible items, but extends as well to the recording of oral statements

overheard without any 'technical trespass under . . . local property law.'"  *Id.* at

353 (quoting *Silverman*, at 511).  Only one justice dissented in *Katz* and it became

indisputable in 1967 that the privacy protection theory was indeed viable.

Therefore, it cannot be denied that the Fourth Amendment protection against

unreasonable searches and seizures shields the people from the warrantless

interception of electronic data or sound waves carrying communications.  The next

step of analysis, then, is to inquire whether that protection covers not only content,

but also the transmission itself when it reveals information about the personal

source of the transmission, specifically his location.  The Supreme Court in *Jones*

dealt with such an electronic seizure by the government and reached a conclusion

instructive to us in the present controversy.

The *Jones* case involved not cell site location data, but the somewhat

similar location data generated by a Global-Positioning-System (GPS) tracking

device attached to the automobile of a suspected drug dealer by law enforcement

agents.  Although the agents originally attached the device and gathered the

13

information transmitted by it under the authority of a warrant, that warrant

authorized installation in the District of Columbia for a period of ten days.  The

agents installed the device on the eleventh day outside the District of Columbia.

The government then tracked the vehicle's movements for twenty-eight days.  The

prosecution offered the resulting record of the defendant's movements and

whereabouts over that period of time in evidence against him in his trial for drug

trafficking conspiracy.

The trial court in *Jones* suppressed the location evidence generated by the

device on Jones's vehicle while it was parked in his own premises, but admitted

the data reflecting its movements on the streets and highways in the belief that

Jones would have no reasonable expectation of privacy when the vehicle was on

public streets.  *See United States v. Jones*, 451 F. Supp. 2d 71, 87–89 (D.D.C.

2006).  On conviction, Jones and a codefendant, Maynard, appealed.  The Court of

Appeals for the District of Columbia Circuit reviewed the Fourth Amendment

issue and noted that the prosecution had employed the GPS device to track Jones's

"movements continuously for a month."  *United States v. Maynard*, 615 F.3d 544,

549 (D.C. Cir. 2010).  The court considered the government's argument that each

of Jones's movements over the month was exposed to the public, and that

therefore, he had no reasonable expectation of privacy in them.  The court rejected

this argument, noting that "the whole of one's movements over the course of a

month . . . reveals far more than the individual movements that it comprises.  The

difference is not one of degree but of kind, for no single journey reveals the habits

and patterns that mark the distinction between a day in the life and a way of life,

nor the departure from a routine that . . . may reveal even more."  *Id.* at 561–62.

By way of example, the court noted that "[r]epeated visits to a church, a

gym, a bar, or a bookie tell a story not told by a single visit . . . ."  *Id.* at 562.  The

court noted further that "the sequence of a person's movements can reveal still

more; a single trip to a gynecologist's office tells little about a woman, but that trip

followed a few weeks later by a visit to a baby supply store tells a different story."

*Id.*

The court recalled the "mosaic theory" often relied upon by the government

"in cases involving national security information."  *Id.*  As the Supreme Court has

observed in that context, "what may seem trivial to the uninformed, may appear of

great moment to one who has a broad view of the scene and may put the

questioned item of information in its proper context."  *CIA v. Simms*, 471 U.S. 159,

170 (1985) (internal quotation marks and citations omitted).  The circuit reasoned

that although each element of Jones's movements throughout the month might

have been exposed to the public, the "aggregation of [those] movements over the

course of a month," was not so exposed, and his expectation of privacy was

reasonable.  *Maynard*, 615 F.3d at 563.  The court reversed Jones's conviction.

15

The United States sought and obtained *certiorari*.  The Supreme Court affirmed.

Like the Court of Appeals, the High Court concluded that the warrantless gathering

of the GPS location information had violated Jones's Fourth Amendment rights.

While the *Jones* case does instruct our analysis of the controversy before us,

it does not conclude it.  As discussed at length above, Fourth Amendment

jurisprudence has dual underpinnings with respect to the rights protected:  the

trespass theory and the privacy theory.  In *Jones*, Justice Scalia delivered the

decision of the Court in an opinion that analyzed the facts on the basis of the

trespass theory.  Because the agents had committed a trespass against the effects of

Jones when they placed the GPS device on his car, the opinion of the Court did not

need to decide whether Jones's reasonable expectation of privacy had been

violated because his rights against trespass certainly had.

As the United States rightly points out, in the controversy before us there

was no GPS device, no placement, and no physical trespass.  Therefore, although

*Jones* clearly removes all doubt as to whether electronically transmitted location

information can be protected by the Fourth Amendment, it is not determinative as

to whether the information in this case is so protected.  The answer to that question

is tied up with the emergence of the privacy theory of Fourth Amendment

jurisprudence.  While *Jones* is not controlling, we reiterate that it is instructive.

16

In *Jones*, Justice Scalia's opinion for the Court speaks on behalf of the author and three other Justices, Chief Justice Roberts, and Justices Kennedy and Thomas. It is, however, a true majority opinion, as Justice Sotomayor, who wrote separately, "join[ed] the majority's opinion." *Jones*, 132 S. Ct. at 957. However, she did so in a separate concurrence that thoroughly discussed the possible applicability of the privacy theory to the electronic data search. We note that she fully joined the majority's opinion, and was certainly part of the majority that held that such a search is violative under the trespass theory.

Four other justices concurred in the result in an opinion authored by Justice Alito, which relied altogether on the privacy theory. Justice Alito wrote, "I would analyze the question presented in this case by asking whether respondent's reasonable expectations of privacy were violated by the long-term monitoring of the movements of the vehicle he drove." *Id.* at 958 (Alito, J., concurring in the result). Justice Alito and the justices who joined him ultimately concurred in the result because they did conclude that "the lengthy monitoring that occurred in this case constituted a search under the Fourth Amendment." *Id.* at 964. Justice Sotomayor, in her separate concurrence, opined that it was not necessary to answer difficult questions concerning the applicability of the reasonable-expectation-of-privacy test to the *Jones* facts "because the government's physical intrusion on Jones' jeep supplies a narrower basis for decision." *Id.* at 957 (Sotomayor, J.,

17

concurring).  Conspicuously, she also noted that "in cases involving even short-term monitoring, some unique attributes of GPS surveillance relevant to the *Katz* analysis will require particular attention." *Id.* at 955.  She noted that electronic "monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations." *Id.* (citing *People v. Weaver*, 909 N.E. 2d 1195, 1199 (NY 2009).

Even the opinion of the Court authored by Justice Scalia expressly did not reject the applicability of the privacy test.  While chiding the concurrence for "mak[ing] *Katz* the exclusive test," the opinion of the Court expressly noted that "[s]ituations involving merely the transmission of electronic signals without trespass would *remain* subject to [the] *Katz* [privacy] analysis." *Id.* at 953.  In light of the confluence of the three opinions in the Supreme Court's decision in *Jones*, we accept the proposition that the privacy theory is not only alive and well, but available to govern electronic information of search and seizure in the absence of trespass.

Having determined that the privacy theory of Fourth Amendment protection governs this controversy, we conclude that the appellant correctly asserts that the government's warrantless gathering of his cell site location information violated his reasonable expectation of privacy.  The government argues that the gathering of

cell site location information is factually distinguishable from the GPS data at issue

in *Jones*.  We agree that it is distinguishable; however, we believe the distinctions

operate against the government's case rather than in favor of it.

   *Jones*, as we noted, involved the movements of the defendant's automobile

on the public streets and highways.  Indeed, the district court allowed the

defendant's motion to suppress information obtained when the automobile was not

in public places.  The circuit opinion and the separate opinions in the Supreme

Court concluded that a reasonable expectation of privacy had been established by

the aggregation of the points of data, not by the obtaining of individual points.

Such a mosaic theory is not necessary to establish the invasion of privacy in the

case of cell site location data.

   One's car, when it is not garaged in a private place, is visible to the public,

and it is only the aggregation of many instances of the public seeing it that make it

particularly invasive of privacy to secure GPS evidence of its location.  As the

circuit and some justices reasoned, the car owner can reasonably expect that

although his individual movements may be observed, there will not be a "tiny

constable" hiding in his vehicle to maintain a log of his movements.  132 S. Ct. at

958 n.3 (Alito, J., concurring).  In contrast, even on a person's first visit to a

gynecologist, a psychiatrist, a bookie, or a priest, one may assume that the visit is

private if it was not conducted in a public way.  One's cell phone, unlike an

19

automobile, can accompany its owner anywhere. Thus, the exposure of the cell site location information can convert what would otherwise be a private event into a public one. When one's whereabouts are not public, then one may have a reasonable expectation of privacy in those whereabouts. Therefore, while it may be the case that even in light of the *Jones* opinion, GPS location information on an automobile would be protected only in the case of aggregated data, even one point of cell site location data can be within a reasonable expectation of privacy. In that sense, cell site data is more like communications data than it is like GPS information. That is, it is private in nature rather than being public data that warrants privacy protection only when its collection creates a sufficient mosaic to expose that which would otherwise be private.

The United States further argues that cell site location information is less protected than GPS data because it is less precise. We are not sure why this should be significant. We do not doubt that there may be a difference in precision, but that is not to say that the difference in precision has constitutional significance. While it is perhaps possible that information could be sufficiently vague as to escape the zone of reasonable expectation of privacy, that does not appear to be the case here. The prosecutor at trial stressed how the cell phone use of the defendant established that he was near each of six crime scenes. While committing a crime is certainly not within a legitimate expectation of privacy, if the cell site location data

could place him near those scenes, it could place him near any other scene. There is a reasonable privacy interest in being near the home of a lover, or a dispensary of medication, or a place of worship, or a house of ill repute. Again, we do not see the factual distinction as taking Davis's location outside his expectation of privacy. That information obtained by an invasion of privacy may not be entirely precise does not change the calculus as to whether obtaining it was in fact an invasion of privacy.

Finally, the government argues that Davis did not have a reasonable expectation of privacy because he had theretofore surrendered that expectation by exposing his cell site location to his service provider when he placed the call. The government correctly notes that "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to government authorities . . . ." *United States v. Miller*, 425 U.S. 435, 443 (1976). In *Smith v. Maryland*, 442 U.S. 735 (1979), at the request of law enforcement authorities, a telephone company installed a pen register to record numbers dialed from the defendant's telephone. The *Smith* Court held that telephone users had no subjective expectation of privacy in dialed telephone numbers contained in telephone companies' records. *Id.* at 742–44. While the government's position is not without persuasive force, it does not ultimately prevail.

The Third Circuit considered this argument in *In re Electronic Communications Service to Disclose*, *supra*.  As that circuit noted, the Supreme Court in *Smith* reasoned that phone subscribers "assumed the risk that the company would reveal to police the numbers [they] dialed."  442 U.S. at 744.  *See also* 620 F.3d at 304.  The reasoning in *Smith* depended on the proposition that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties," 442 U.S. at 743–44.  The Third Circuit went on to observe that "a cell phone customer has not 'voluntarily' shared his location information with a cellular provider in any meaningful way."  That circuit further noted that "it is unlikely that cell phone customers are aware that their cell phone providers collect and *store historical location information*."  620 F.3d at 317 (emphasis added).  Therefore, as the Third Circuit concluded, "when a cell phone user makes a call, the only information that is voluntarily and knowingly conveyed to the phone company is the number that is dialed, and there is no indication to the user that making that call will also locate the caller."  *Id.*  Even more persuasively, "when a cell phone user receives a call, he hasn't voluntarily exposed anything at all."  *Id.* at 317–18.

Supportive of this proposition is the argument made by the United States to the jury.  The prosecutor stated to the jury "that obviously Willie Smith, like [Davis], probably had no idea that by bringing their cell phones with them to these

22

robberies, they were allowing [their cell service provider] and now all of you to follow their movements on the days and at the times of the robberies . . . ." Just so. Davis has not voluntarily disclosed his cell site location information to the provider in such a fashion as to lose his reasonable expectation of privacy.

In short, we hold that cell site location information is within the subscriber's reasonable expectation of privacy. The obtaining of that data without a warrant is a Fourth Amendment violation. Nonetheless, for reasons set forth in the next section of this opinion, we do not conclude that the district court committed a reversible error.

II. *The* Leon *Exception*

The United States contends that even if we conclude, as we have, that the gathering of the cell site location data without a warrant violated the constitutional rights of the defendant, we should nonetheless hold that the district court did not commit reversible error in denying appellant's motion to exclude the fruits of that electronic search and seizure under the "good faith" exception to the exclusionary rule recognized in *United States v. Leon*, 468 U.S. 897 (1984). We agree.

In *Leon*, the Court observed that "'[i]f the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional

under the Fourth Amendment.'"  *Id.* at 919 (quoting *United States v. Peltier*, 422 U.S. 531, 542 (1975)).  In *Leon*, the Supreme Court reviewed the exclusion of evidence seized "by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause."  468 U.S. at 900.  The High Court held that "when an officer acting with objective good faith has obtained a search warrant from a judge . . . and acted within its scope," the exclusionary rule should not be employed to "[p]enaliz[e] the officer for the magistrate's error."  *Id.* at 920–21.  As the Court observed in *Leon*, such an application of the exclusionary rule "cannot logically contribute to the deterrence of Fourth Amendment violations."  *Id.*

The only differences between *Leon* and the present case are semantic ones. The officers here acted in good faith reliance on an order rather than a warrant, but, as in *Leon*, there was a "judicial mandate" to the officers to conduct such search and seizure as was contemplated by the court order.  *See id.* at 920 n.21.  As in *Leon*, the officers "had a sworn duty to carry out" the provisions of the order.  *Id.* Therefore, even if there was a defect in the issuance of the mandate, there is no foundation for the application of the exclusionary rule.

We further add that *Leon* speaks in terms of the "magistrate's" error.  Here, the law enforcement officers, the prosecution, and the judicial officer issuing the order, all acted in scrupulous obedience to a federal statute, the Stored

24

Communications Act, 18 U.S.C. § 2703.  At that time, there was no governing authority affecting the constitutionality of this application of the Act.  There is not even allegation that any actor in the process evidenced anything other than good faith.  We therefore conclude that under the *Leon* exception, the trial court's denial of the motions to suppress did not constitute reversible error.

III. *Prosecutorial Misconduct*

Appellant argues that the trial prosecutor, in his summation to the jury, engaged in improper behaviors that irreparably tainted Davis's trial.  While he refers to several parts of the argument, the two that typify his argument were the prosecutor's reference to a substance, perhaps blood, being "all over" a getaway car, when in fact there were only a few drops; and what appellant describes as "long strings of bolstering witnesses' testimony."  We have reviewed the trial transcript of the closing argument and conclude that the prosecutor's statements warrant no relief on appeal.

As to the statements described by Davis as exaggeration of the evidence, we see no more than rhetorical flourish.  The prosecution could, without violating Davis's rights, characterize the evidence as could the defense counsel in presenting Davis's case.  The bolstering is admittedly troubling.

The problem of a prosecutor's vouching for government witnesses is indeed a very real one.  In *United States v. Young*, 470 U.S. 1, 18–19 (1985), the Supreme Court observed that prosecutorial vouching

> can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

The Supreme Court's analysis of the prosecutor's role draws a clean line.  He may comment on the evidence before the jury, but he may not augment that evidence by implication that he or others on the prosecution team are aware of further evidence not presented in court.  While we recognize that in the heat of the courtroom, an arguing lawyer may say things he would later regret, the record in this case discloses that the prosecutor did cross that line.  Specifically, he stated, with respect to the government witness Martin, "he came clean and confessed [one hundred] percent and told the police precisely the same story that he told all of you, the story he has told me one hundred times since."

The evidence before the jury certainly did not demonstrate that Martin had told the prosecutor the same story one hundred times since his original confession.  The government argued to us that the phrase "one hundred times" is only a colloquialism and that the argument "relied on facts in evidence."  Appellee's Br.

at 33.  We cannot agree with this styling, but nonetheless conclude that there is no ground for reversal here.

Prosecutorial misconduct will result in reversal only in those instances in which the misbehavior is so pervasive as to "permeate the entire atmosphere of the trial."  *United States v. McLain*, 823 F.2d 1457, 1462 (11th Cir. 1987).  We proceed under a two-part test.  First, the comments at issue must actually be improper, and second, any comments found to be improper must prejudicially affect the substantial rights of the defendant.  *United States v. Schmitz*, 634 F.3d 1247, 1267 (11th Cir. 2011).

We conclude that no such prejudicial effect is present.  The improper remark here is a small item following a dense record of evidence against the defendant, and evidence which in fact included prior consistent statements by the witness Martin.

Further, and of great importance, the district court removed the comments from the jury's consideration and properly instructed the jurors on the nature of closing arguments.  The court instructed that the prosecutor's statements were "not in evidence, and even if [they were], that doesn't make [them] true or not true."  We must presume that a jury follows its instructions.  *Richardson v. Marsh*, 481 U.S. 200 (1987).  In short, the prosecutor's statements are not a basis for reversal.

27

IV. *The Sentencing Enhancements*

Davis raises two constitutional objections to the computation of his sentence. He contends that the enhancement for the second or subsequent offenses and for brandishing a weapon were imposed in violation of his Sixth Amendment right to trial by jury; the underlying facts, in the one case "subsequence," and in the second case "brandishing," were not found by a jury beyond a reasonable doubt. Upon review, we conclude that his claim warrants no relief as to the second or subsequent enhancement, but is meritorious on the brandishing issue.

This sort of Sixth Amendment claim is governed by the Supreme Court decision in *United States v. Alleyne*, ___ U.S. ___, 133 S. Ct. 2151 (2013). In *Alleyne*, the Supreme Court overruled its prior opinion in *Harris v. United States*, 536 U.S. 545, 551–56 (2002), and held that the Sixth Amendment requires any fact which increases a mandatory minimum sentence to be submitted to the jury. *Alleyne*, 133 S. Ct. at 2162–63. However, the *Alleyne* decision does not warrant relief on the "second or subsequent" mandate for consecutive sentences. *Alleyne* relied heavily on *United States v. Apprendi*, in which the Court specifically excluded the fact of a prior conviction from its general holding requiring a jury to pass on those issues increasing the penalty beyond a statutory maximum. 530 U.S. 466, 490. In *Alleyne*, the Court declined to reconsider its holding in *Almendarez-Torrez v. United States*, 523 U.S. 224 (1998), that the fact of a prior conviction

28

need not be treated as an element of an offense.  *Alleyne*, 133 S. Ct. at 2160 n.1.  It

follows, then, that we may not revisit this holding either.

The jury did not make a specific finding that the convictions for Counts 5, 7,

9, 11, 14, and 17 were second or subsequent convictions under 18 U.S.C. § 924(c).

However, there is no *Alleyne* violation where the judicial finding is the fact of a

prior conviction, a finding the jury need not make.  In any event, the superseding

indictment charged Davis separately as to each of the seven robberies that occurred

on separate days.  By virtue of logic, each of Counts 5, 7, 9, 11, 14, and 17 was

second or subsequent when the jury found that they were committed as set forth in

the superseding indictment.  We can offer no relief based on Davis's contention

that a concurrently found conviction should be treated differently for Sixth

Amendment purposes from a conviction which predates the indictment in the

current case.  He cites *United States v. Shepard*, 544 U.S. 13, 26 (2005), but

*Shepard* does not speak to the issue before us.  It discusses only the types of

documents a sentencing court can consider.  Accordingly, the district court did not

err in sentencing Davis to consecutive mandatory terms of imprisonment based on

its finding that his convictions were second or subsequent enhancements within the

meaning of 18 U.S.C. § 924(c).

The "brandishing" issue, however, does warrant relief.  Although Davis did

not raise the issue below, an appellate court can review for errors not raised at trial

under the "plain error" standard.  Under that standard, we may correct the error

that the defendant did not raise only if there is "(1) error, (2) that is plain, and (3)

that affects substantial rights." *United States v. McKinley*, 732 F.3d 1291, 1295

(11th Cir. 2013).  If these three elements are met, we may then in our discretion

correct the error, only if "(4) the error seriously affects the fairness, integrity, or

public reputation of judicial proceedings." *Id.*  For example, the fourth prong of

plain error review would not be met "where the evidence of a statutory element of

an offense is overwhelming and essentially uncontroverted." *Id.* at 1297.

    A sentencing decision is in error when it violates a relevant Supreme Court

ruling. *See United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005).  An

error is plain if it is "clear from the plain meaning of a statute or constitutional

provision, or from a holding of the Supreme Court or this Court." *United States v.*

*Pantle*, 637 F.3d 1172, 1174–75 (11th Cir. 2011).  An error affects substantial

rights if it affected the outcome of the district court proceedings. *Rodriguez*, 398

F.3d at 1299.  The defendant bears the burden of persuasion to demonstrate such

prejudice. *Id.*  Finally, we consider whether the error had such an effect on the

proceedings as to motivate use of our discretion to restore the equality and

reliability of judicial proceedings in the eyes of the public. *United States v.*

*Shelton*, 400 F.3d 1325, 1332–33 (11th Cir. 2005).

On Count 3, the jury found that Davis "possessed a firearm in furtherance of the robbery." At the sentencing hearing, the district court heard from the probation officer, who reported that "Count 3, which is possession of a firearm in furtherance of a crime of violence . . . calls for a minimum imprisonment sentence of seven years . . . ." The district court imposed then "84 months [seven years] as to Count 3 to be served consecutively to the terms imposed as to [the other counts]." The text of 18 U.S.C. § 924(c)(1)(A)(ii) requires that "if the firearm is brandished, [the defendant] be sentenced to a term of imprisonment of not less than 7 years." For possession, the applicable sentence is "a term of imprisonment of not less than 5 years." § 924(c)(1)(A)(i). The district court's finding vis á vis Count 3 is therefore inconsistent with the superseding indictment's charge, and the jury's finding, of possession rather than brandishing.

In reviewing the prejudicial effect of the deviation, we note that the district judge candidly stated that if he were not constrained by statutory maxima, he "would impose a sentence here that would not be a life sentence." It therefore appears that the extra length on this count would not have been imposed in the absence of what we now view as a plain error. Additionally, we also find that this error "affected the fairness, integrity, or public reputation of the judicial proceedings." *McKinley*, 732 F.3d at 1297. The evidence that Davis personally brandished the firearm he possessed during the robbery of the Little Caesar's

31

restaurant is not "overwhelming and essentially uncontroverted." *Id.* To the

contrary, only one witness testified that a gun was pointed at her, and there is no

evidence that Davis was the one who did it. Further, the jury had an opportunity to

convict Davis of either (1) possessing a firearm in furtherance of the robbery or (2)

using or carrying a firearm in furtherance of the robbery. Yet it only found that

Davis possessed a firearm. We therefore will be constrained to vacate the

extension of the sentence. In doing so, we observe on behalf of both the judge who

entered the sentence and the counsel who did not raise the error that the trial in this

case preceded the Supreme Court decision in *Alleyne*.

V. *Eighth Amendment Claim*

Davis argues that the 162-year sentence, which obviously amounts to a life

sentence, constitutes cruel and unusual punishment. In support of this proposition,

he stresses that he was eighteen and nineteen years old at the time of the

commission of the offenses, and suffered from bipolar disorder and a severe

learning disability, and had no prior convictions. While these are no doubt

significant factors, we can grant no relief on this issue.

Allegations of cruel and unusual punishment are legal questions subject to

our *de novo* review. *United States v. Haile*, 685 F.3d 1211, 1222 (11th Cir. 2012),

*cert. denied*, __ U.S. __, 133 S. Ct. 1723 (2013).

Davis argues that the mandatory consecutive nature of his sentence violated

the Eighth Amendment's prohibition on cruel and unusual punishment.  He views his sentence, totaling nearly 162 years, as grossly disproportionate when considering his youth, intellectual disability, and emotional maturity, and as especially harsh for a non-homicide offense.  For its part, the Government relies on the rarity of successful proportionality cases for adult offenders outside the capital context.

As applied to noncapital offenses, the Eighth Amendment encompasses at most only a narrow proportionality principle.  *United States v. Brant*, 62 F.3d 367, 368 (11th Cir. 1995) (citing *Harmelin v. Michigan*, 501 U.S. 957 (1991)).  We accord substantial deference to Congress: "In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment."  *United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006) (quotation omitted).  We must first make the determination whether a total sentence is grossly disproportionate to the offenses committed.  *Id.*  In *United States v. Farley*, 607 F.3d 1294, 1339 (11th Cir. 2010), we held that the mandatory nature of a noncapital penalty is irrelevant for proportionality purposes, and observed that we have never found a term of imprisonment to violate the Eighth Amendment.  *Id.* at 1343.  Nor do we do so now.

Here, Davis's total sentence is unmistakably severe.  However, a gross proportionality analysis necessarily compares the severity of a sentence to the

crimes of conviction, and Davis's crimes were numerous and serious.  Multiple

victims experienced being robbed and threatened with a handgun.  Davis's use of a

handgun entailed a risk or severe injury or death.  Trial testimony established that

Davis shot at a dog,  and actually exchanged fire with a witness following the

Wendy's robbery.  We cannot conclude that such repeated disregard for the law

and for victims should overcome Congress's determination of what constitutes an

appropriate sentence, even when Eighth Amendment concerns are implicated.

VI. *Sufficiency of the Evidence on Count 17*

Davis contends that the district court erred by denying his motion for

judgment of acquittal on Count 17 because, in his view, the evidence failed to

establish that he facilitated a codefendant's use of a firearm during the Mayor's

Jewelry Store robbery.  We disagree.

We review *de novo* the district court's denial of a motion for a judgment of

acquittal on sufficiency of evidence grounds.  *United States v. Browne*, 505 F.3d

1229, 1253 (11th Cir. 2007).  We consider the evidence in the light most favorable

to the Government and draw all reasonable inferences and credibility choices in the

Government's favor.  *United States v. Friske*, 640 F.3d 1288, 1290–91 (11th Cir.

2011).

Davis argues that there is insufficient evidence to support his conviction on

Count 17 of the superseding indictment, which charges aiding and abetting a

codefendant's possession of a firearm during the jewelry store robbery.  In his estimation, the evidence does not show that he had prior knowledge of any gun before the jewelry store robbery.  In fact, he tells us, the evidence establishes that he was not involved in the planning of the robbery, precluding his prior knowledge of the firearm.  At most, the jury intuited that Davis had prior knowledge of the gun, which is an insufficient basis on which to sustain his conviction.

The Government argues that a reasonable construction of the evidence demonstrates that Davis knew his codefendant would be carrying a gun during the jewelry store robbery and that Davis enjoyed the protection of the firearm during the commission of the robbery.  According to the Government, its evidence constitutes a showing sufficient to support a conviction for aiding and abetting a codefendant's possession of a firearm.

Recently, the Supreme Court decided *Rosemond v. United States*, __ U.S. __, 134 S. Ct. 1240 (2014), in which it clarified the standard regarding the precise question before us: What must the Government show when it seeks to establish that a defendant is guilty of aiding or abetting the offense of using or carrying a firearm during a crime of violence?  In *Rosemond*, the Court held that the Government must prove that the defendant "actively participated in the underlying . . . violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission."  *Rosemond*, 134 S. Ct. at 1243.

35

The Government, as part of its sufficiency argument, notes that Davis must have seen the gun during the robbery, and thus the knowledge element is met.  We note that under *Rosemond*, such a scenario may constitute insufficient evidence if it means that Davis "at that late point ha[d] no realistic opportunity to quit the crime."  *Rosemond*, 134 S. Ct. at 1249.  However, Davis does not argue his inability to retreat, and regardless, this point is beyond the scope of our analysis.  We need only decide whether Davis had the requisite "advance knowledge" described in *Rosemond*.

After *Rosemond*, and considering the evidence in the light most favorable to the Government, a reasonable construction of the evidence supports conviction on Count 17.  The Government established that Davis drove from Miami-Dade County to the robbery site in Broward County with his codefendant, Fisher, who was the gunman.  Both Davis and Fisher sat in the backseat, and the driver of the car turned and handed Fisher the handgun that would be used during the robbery.  We agree with the Government and the district court that the jury could reasonably infer Davis's knowledge of the gun, based on its evaluation of the evidence as tending to demonstrate that Davis saw the gun in the car.  Likewise, the jury may have inferred knowledge based on its finding that Davis participated in prior robberies, or that he assisted in planning the jewelry store robbery.  We leave the

jury's finding on aiding and abetting in Count 17 undisturbed, as it was based on sufficient evidence.

   VII. *Accumulation of Trial Errors Claim*

   We need not linger long over Davis's final claim.  Davis contends that we should grant relief where "a combination of trial errors and prosecutorial misconduct [denies] a defendant a fair trial, regardless of whether the individual errors require reversal on their own."  Appellant's Br. at 42 (citing *United States v. Elkins*, 885 F.2d 775 (11th Cir. 1989)).  This is clearly correct as an abstract proposition of law, but it does not apply to this case.

   Our precedent counsels that a combination of trial errors and prosecutorial misconduct can serve to render a trial unfair, despite no single error requiring reversal.  *Id.* at 787.  However, such a combination is rare because "a conviction should be reversed only if 'a miscarriage of justice would otherwise result.'"  *Id.* (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).  This is not one of those rare cases.

   As we make clear in our discussion above, the limited misconduct by the prosecutor was  readily cured by the instruction of the trial court.  The only cognizable error by the trial court is the admission of the cell site location information, which was at best understandable, given the uncertainty of the law on the subject, and at worst harmless, given that the evidence was admissible against

Davis, albeit on a different theory (the *Leon* exception) than that on which it was propounded.

## CONCLUSION

For the reasons set forth above, we affirm the judgment of conviction and vacate only that portion of the sentence attributable to the enhancement for brandishing.