# No. 12-12928-EE

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

————————

**UNITED STATES OF AMERICA,**

*Plaintiff/appellee,*

**v.**

**QUARTAVIOUS DAVIS,**

*Defendant/appellant.*

————————

**On Appeal from the United States District Court
For the Southern District of Florida**

————————

**APPELLANT'S PETITION FOR REHEARING**

————————

> **JACQUELINE E. SHAPIRO, ESQ.**
> **Attorney for Appellant**
> **40 N.W. 3rd Street, PH 1**
> **Miami, Florida 33128**
> **Telephone No. (305) 403-8207**

## PETITION FOR PANEL REHEARING

## INTRODUCTION

Appellant Quartavious Davis respectfully petitions the Court for rehearing of the June 11, 2014, decision rejecting the defendant's challenges to: (1) the admission at trial of cell site location information (CSLI) on the basis that the government's decision to seek the information by court order rather than a warrant was objectively unreasonable and thus not subject to the good faith exception of the Fourth Amendment exclusionary rule; and (2) the 162-year sentence imposed on Mr. Davis on the basis that it violates the Eighth Amendment prohibition against cruel and unusual punishment, where Mr. Davis's crimes were committed over a short period when he was a teenager, suffered from bipolar disorder and a severe learning disability, and had no prior convictions.

With respect to the application of the good faith exception to the exclusionary rule, the district court's failure to make a good faith finding is a critical consideration meriting, at the least, a remand to enable the district court to address the issue in the first instance. Rehearing is further warranted to address the essential role of the prosecutor in violating Mr. Davis's Fourth Amendment rights, given the particular circumstances here in which law enforcement agents served only as a conduit for transferring the CSLI to the prosecutor.

With respect to Mr. Davis's Eighth Amendment argument, the dynamic nature of Eighth Amendment jurisprudence, combined with Supreme Court authority recognizing that the mandatory nature of a sentence is material to proportionality analysis, merit consideration on rehearing. Further, the decision's reliance on an allegation that Mr. Davis exchanged gunfire with another person warrants rehearing in light of the record reflecting that government witnesses presented conflicting evidence about the shooter's identity, and neither the jury nor the district court made a finding on the matter.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant Quartavious Davis was convicted of Hobbs Act and firearm charges relating to seven robberies of small businesses. On appeal, a panel of this Court held the government violated Mr. Davis's Fourth Amendment rights when it obtained cell site location information (CSLI) without a warrant and used that information to link Mr. Davis to six of the seven robberies.

The government relied heavily on the CSLI as proof that Mr. Davis participated in the robberies. The CSLI was central to the government's proof of 13 of the 16 offenses of conviction (six substantive Hobbs Act robberies, Counts 2, 4, 6, 8, 10, 13; a Hobbs Act conspiracy, Count 1; and six firearm convictions, Counts 3, 5, 7, 9, 11, 14). The panel affirmed the tainted convictions based on the good faith doctrine of *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984).

2

During the sentencing hearing, the district court imposed mandatory minimum sentences totaling 1,884 months (157 years) for Mr. Davis's seven convictions under 18 U.S.C. § 924(c)(1)(A)[1] and an additional 57 months for the Hobbs Act convictions. Mr. Davis argued that his sentence of nearly 162 years violated the Eighth Amendment, but the district court overruled this objection. The district court opined that the mandatory sentence was excessive and stated it would have imposed a 40-year sentence if afforded the discretion to do so. A panel of this Court held that the sentence did not violate the Eighth Amendment.

## LEGAL ANALYSIS

### I.    The Good Faith Exception to the Exclusionary Rule Does Not Apply to the Prosecutor's Fourth Amendment Violation.

A panel of this Court held that Mr. Davis had a reasonable expectation of privacy in cell site location information (CSLI) used to secure 13 of his 16 convictions. *United States v. Davis*, 2014 WL 2599917, at *10. The panel further held that obtaining the CSLI without a warrant violated Mr. Davis's Fourth Amendment rights against unreasonable searches and seizures. *Id*. The Court nevertheless concluded "the district court did not commit reversible error in denying

---

[1]The panel concluded that one of the sentences must be reduced by two years. *United States v. Davis*, __ F.3d __, 2014 WL 2599917, at **13-14, 17 (11th Cir. June 11, 2014).

3

[Mr. Davis's] motion to exclude the fruits of that electronic search and seizure under the 'good faith' exception to the exclusionary rule recognized in *United States v. Leon*, 468 U.S. 897 (1984)." *Id.*

### A.    The District Court Did Not Make a Good Faith Finding.

The panel decision overlooks the fact that the district court did not rely on *Leon*'s good faith exception to the exclusionary rule when it denied Mr. Davis's motion to suppress the CSLI.  The district court did not explain its reasons for denying Mr. Davis's motion.  *See* D.E. 276; D.E. 364:192-93.

The panel's holding that the government violated Mr. Davis's Fourth Amendment rights makes the determination of the good faith issue essential to the outcome of this case.  The good faith issue should be decided by the district court in the first instance.  *See United States v. Accardo*, 749 F.2d 1477, 1481 (11th Cir. 1985) (remanding to permit the district court to decide the good faith issue in the first instance).

### B.    The Leon Good Faith Exception Does Not Apply In This Case.

The panel relied exclusively on *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984), in analyzing whether the good faith exception to the exclusionary rule excuses the government's Fourth Amendment violation.  In *Leon,* the Supreme Court held the exclusionary rule does not apply when the government obtains evidence "in

4

objectively reasonable reliance on a subsequently invalidated search warrant." 468 U.S. at 922, 104 S.Ct. at 3420. The Court should rehear the case given the materially distinct factual circumstances relevant to applying the narrow exception in *Leon*.

First, as explained below, the Fourth Amendment error in this case occurred when the prosecutor elected to seek constitutionally protected evidence by means of a court order, rather than seeking a search warrant based on probable cause. The panel mistakenly focused on the actions of unidentified "officers," and it attributed the constitutional error to the magistrate judge. Specifically, the panel (1) stated officers in this case "acted in good faith reliance on an order" issued by a magistrate judge; (2) stated those "officers 'had a sworn duty to carry out' the provisions of the order," and (3) referred to "the 'magistrate's' error." *United States v. Davis*, 2014 WL 2599917, at *10 (quoting *Leon*, 468 U.S. at 920 n.21, 104 S.Ct. at 3419).

The record reflects no relevant action on the part of any law enforcement officer. At the prosecutor's request, the magistrate judge directed the cell phone provider to turn CSLI over to a federal agent. D.E. 266-1, 268-1. The agent, at most, served as a conduit in providing the records to the prosecutor. The prosecutor later told the district court he obtained the requested information and forwarded it to another police department for analysis. D.E. 364:167.

5

In addition, constitutional error should not be attributed exclusively to the magistrate judge; instead, responsibility for the error in this case rested primarily or exclusively with the prosecutor. As established below, the prosecutor's actions when he sought and obtained constitutionally protected information without establishing probable cause and securing a warrant fell outside the bounds of objective good faith.

*Leon* establishes that any reliance the investigative team places on a decision made by a judicial officer must be objectively reasonable. 468 U.S. at 922, 104 S.Ct. at 3420. The task facing the magistrate in *Leon* was the well-established duty to determine whether the information presented by a police office sufficed to establish probable cause. The magistrate in *Leon* made that determination, albeit erroneously. In contrast, the essential question underlying the constitutionality of the search and seizure in this case, *i.e.*, whether CSLI could constitutionally be obtained by court order, was never presented to the magistrate judge. Further, when the prosecutor made an *ex parte* request for a court order, he could not reasonably have expected that the magistrate judge would *sua sponte* undertake an assessment of whether the prosecutor's request complied with the Fourth Amendment. Because the prosecutor did not raise the issue, the magistrate judge made no ruling touching on the constitutional question. Thus, to the degree the government claims it relied on a decision made by the magistrate judge, that reliance was objectively unreasonable.

6

Finally, the analysis in *Leon* recognized that officers may rely in good faith on a judicial officer's *issuance of a search warrant*. Thus, *Leon* should not properly be applied to excuse, as here, the government's *failure to seek a search warrant*.

C.    The Government's Reliance on 18 U.S.C. § 2703(c) and (d) to Obtain CSLI Was Objectively Unreasonable.

The government urged the panel to apply the good faith exception to the exclusionary rule based on the government's reliance on provisions of the Stored Communications Act, 18 U.S.C. § 2703(c)(1)(B) and (d). Appellee's Br. at 45 (citing *Illinois v. Krull*, 480 U.S. 340, 348-49, 107 S.Ct. 1160 (1987)). In *Krull*, the Supreme Court held that "a good-faith exception to the Fourth Amendment exclusionary rule applies when an officer's reliance on the constitutionality of a statute is *objectively reasonable*, but the statute is subsequently declared unconstitutional." 480 U.S. at 346, 107 S.Ct. at 1165 (emphasis added). The Court further held an officer cannot "be said to have acted in good-faith reliance upon a statute if its provisions are such that a reasonable officer should have known that the statute was unconstitutional." *Krull,* 480 U.S. at 355, 107 S.Ct. at 1170. The panel did not address *Krull* in its good faith analysis. *Krull* does not support a good faith finding in this case, because the government could not reasonably have relied on 18 U.S.C. § 2703(c)(1)(B) and (d) to authorize a warrantless search and seizure of CSLI.

7

Section 2703 allows the government to obtain cell phone subscriber records by several routes, one being by a warrant obtained upon a showing of probable cause (§ 2703(c)(1)(A)) and another being by court order without probable cause (§ 2703(c)(1)(B), (d)).  To obtain an order, the government need only offer "specific and articulable facts showing that there are reasonable grounds to believe that [the records] are relevant and material to an ongoing criminal investigation."  § 2703(d).

The government could not reasonably have believed Congress considered the application of § 2703 to the seizure of CSLI at the time it enacted the statute in 1986.  The possibility that Congress contemplated the government's later use of the statute to obtain information that could track a cell phone user's movements in relation to suspected criminal activity is extremely remote.  Federal case law documenting the use of CSLI to prove the whereabouts of criminal suspects first appears in the mid-1990's.  *See, e.g.*, *United States v. Thompson*, 454 F.3d 459 (5th Cir. 1996).  Further, Congress could not have contemplated that Miami would be blanketed by a profusion of cell towers in 2011, the time of the charged offenses, resulting in the availability of effective tracking via CSLI.  Thus, the government used § 2703(c)(1)(B) in a context not contemplated by Congress.

*Krull*'s expansion of the good faith exception to encompass good faith reliance on statutes rests on the reasoning that "an officer cannot be expected to question the

judgment of the legislature that passed the law." *Krull*, 480 U.S. at 349-50, 107 S.Ct. at 1167. In enacting § 2703, Congress made no judgment about whether prosecutors should be allowed to obtain CSLI by requesting a court order, rather than by establishing probable cause and obtaining a warrant. Thus, when the prosecutor chose to seek constitutionally protected CSLI without obtaining a warrant, he necessarily relied on his own judgment, as informed by his supervisors at the U.S. Attorney's Office and the policies of the U.S. Department of Justice. The prosecutor's judgment, rather than that of Congress, yielded the conclusion that CSLI could be obtained under the authority of the statute, without a warrant. *Krull*'s reasoning therefore does not establish objective good faith on the part of the government.

Moreover, by crafting a statute that provided the prosecution with a warrant option and a non-warrant option, Congress manifested an expectation that the government would make a reasonable effort to determine whether the information it sought was protected by the Fourth Amendment. By providing a warrant option, Congress afforded prosecutors a safety valve to use when seeking private information newly available due to advancing technology. When presented with a statute that provided those options, the prosecutor had a duty to pause and consider the constitutional implications of his request for CSLI. It is unreasonable to believe that

9

Congress intended the warrant and non-warrant provisions to be used interchangeably, subject only to the preference of the prosecutor.

A statute enacted in 1998, after the government began using CSLI for prosecutorial purposes, should have put the government on notice that Congress viewed CSLI as more deserving of constitutional protection than other type of cell phone subscriber information. In 47 U.S.C. § 1002(a)(2)(B), Congress specifically forbade the government from using pen registers and trap and trace devices, which are issued on a relevance standard, 18 U.S.C. § 3123(a)(1), to gain access to "information that may disclose the physical location of the subscriber." The statute limiting the use of these investigative tools surely put the government on notice that Congress considered location information to warrant more protection than other information routinely obtained through phone records. An objectively reasonable prosecutor would have considered this statutory limitation in assessing whether § 2703(c)(1)(B), which embodies a similar standard, authorized a warrantless seizure of CSLI.

At best, the prosecutor could have concluded that the law regarding the application of § 2703(c)(1)(B) to the modern technology used to harvest CSLI was unsettled. Acting in good faith when the law is unsettled requires erring on the side of caution and the Constitution. *United States v. Johnson*, 457 U.S. 537, 561, 102

10

S.Ct. 2579, 2593 (1982) (when constitutional questions are unsettled, objectively reasonable officers err on the side of strictly complying with the Fourth Amendment rather than engaging in constitutionally risky behavior). Instead, the prosecutor made a deliberate, strategic choice not to seek a warrant and, instead, to follow the easier, more expedient path of simply seeking a court order under § 2703(c)(1)(B). This decision is inconsistent with a finding of good faith.

The likelihood that the prosecutor subjectively believed that using the statute to obtain CSLI was constitutional is immaterial. The good faith exception must be applied using an objective reasonableness standard. *United States v. Herring*, 555 U.S. 135, 145, 129 S.Ct. 695, 703 (2009).

   D.   *Application of the Exclusionary Rule Will Deter Future Constitutional Violations.*

The panel implicitly concluded that application of the exclusionary rule to the improperly-obtained CSLI would not have a deterrent effect in future investigations. However, the explosion of technological advances in recent years has created innumerable situations where prosecutors must assess whether traditional doctrines apply when accessing electronic data that did not exist or was not readily available at the time the doctrines were developed. The use of CSLI in criminal prosecutions is but one example of the manner in which modern technology creates uncertainty in

how to apply traditional constitutional principles. For example, in *Riley v. California*, __ U.S. __, 134 U.S. 2473 (2014), the Supreme Court addressed whether police officers could conduct warrantless searches of digital information on cells phone in reliance on the well-established warrant exception for searches incident to arrest. The Court rejected various analogies advanced by the government in support of approving the warrantless searches and held that the time-honored search-incident-to-arrest exception to the warrant requirement could not justify the warrantless search of cell phone data. *See also Kyllo v. United States*, 533 U.S. 27, 33, 121 S.Ct. 2038, 2043 (2001) (noting that prior Fourth Amendment holdings should not be unduly extended in light of technological advances).

The government is an interested party that has a stake in all federal criminal prosecutions. It cannot be expected to view its options objectively when faced with the need to apply constitutional principles in circumstances that were not contemplated when long-standing doctrines were being developed. From the government's perspective, the interest of expediency in conducting criminal investigations may weigh in favor of using traditional investigative tools and methods aggressively to obtain evidence made possible by recent technology, despite uncertainty about whether constitutional violations may result.

If the government can be secure in the knowledge that the courts will apply the good faith exception to insulate from reversal convictions obtained through such evidence, the government has no reason to exercise caution in recognizing and protecting the Fourth Amendment rights of suspects.  Exclusion of the CSLI obtained in violation of Mr. Davis's Fourth Amendment rights is necessary to deter future constitutional violations.

II.    **Mr. Davis's 162-Year Sentence Violates the Eighth Amendment Prohibition Against Cruel and Unusual Punishments Where Mr. Davis's Crimes Were Committed Over a Short Period When He Was a Teenager, He Suffered From Bipolar Disorder and a Severe Learning Disability, and He Had No Prior Convictions.**

In its discussion of the Eighth Amendment, the panel noted this Court has never found that a term of imprisonment violated the Eighth Amendment.  *United States v. Davis*, 2014 WL 2599917, at *14.  In view, however, of the dynamic nature of Eighth Amendment jurisprudence and the need for courts to take into account "evolving standards of decency that mark the progress of a maturing society," *Graham v. Florida*, __ U.S. __, 130 S. Ct. 2011, 2021 (2012), consideration of a defendant's individualized sentencing circumstances is essential to ensure adherence to the command of the Eighth Amendment.

The Court also relied on *United States v. Farley*, 607 F.3d 1294, 1339 (11th Cir. 2010), for the proposition that "the mandatory nature of a noncapital penalty is

13

irrelevant for proportionality purposes." *United States v. Davis*, 2014 WL 2599917, at *14. The Supreme Court, however, has effectively overruled this facet of *Farley*. In *Miller v. Alabama*, __ U.S. __, 132 S. Ct. 2455, 2466 (2012), the Supreme Court established that an otherwise permissible sentence can be rendered disproportionately harsh when its imposition is mandatory rather than discretionary.

Finally, when addressing the seriousness of Mr. Davis's crime, the panel stated that Mr. Davis exchanged gunfire with a witness following the robbery of a Wendy's restaurant. *United States v. Davis*, 2014 WL 2599917, at *15. The record reflects, however, that the government introduced conflicting evidence at trial concerning the identity of the shooter (*see* Appellant's Initial Br. at 9), and neither the jury nor the district court found that Mr. Davis was the shooter.

## CONCLUSION

Appellant Quartavious Davis respectfully submits that the Court should grant this petition for panel rehearing.

Respectfully submitted,

/s/  Jacqueline E. Shapiro
JACQUELINE E. SHAPIRO, ESQ.
Attorney for Appellant
40 N.W. 3rd Street, PH 1
Miami, Florida 33128
Telephone No. (305) 403-8207
Facsimile No. (305) 403-8209

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing petitioner for rehearing en banc or, alternatively, for panel rehearing was sent by U.S. Mail this 1st day of August, 2014 to all counsel of record.

 /s/  Jacqueline E. Shapiro
JACQUELINE SHAPIRO, ESQ.

15


--- F.3d ----, 2014 WL 2599917 (C.A.11 (Fla.)), 24 Fla. L. Weekly Fed. C 1413
**(Cite as: 2014 WL 2599917 (C.A.11 (Fla.)))**

**H**

United States Court of Appeals,
Eleventh Circuit.
UNITED STATES of America, Plaintiff–Appellee,
v.
Quartavious DAVIS, Defendant–Appellant.

No. 12–12928.
June 11, 2014.

**Background:** Defendant was convicted in the United States District Court for the Southern District of Florida of Hobbs Act robbery, conspiracy to violate the Hobbs Act, and knowing possession of a firearm in furtherance of a crime of violence. The defendant appealed.

**Holdings:** The Court of Appeals, Sentelle, Circuit Judge, held that:

(1) as a matter of first impression, a provision of the Stored Communications Act (SCA) which allowed the government to obtain cell site location information without showing probable cause violated a defendant's Fourth Amendment rights;

(2) good faith exception to the exclusionary rule applied to the search and seizure of the defendant's cell site location information;

(3) the prosecutor improperly bolstered the credibility of a government witness in summation to the jury;

(4) the prosecutor's improper commentary on the credibility of a witness did not require reversal on plain error review;

(5) jury was not required to make a specific finding that six of the defendant's robbery convictions were second or subsequent convictions for purposes of sentencing enhancement;

(6) the District Court plainly erred in enhancing defendant's sentence for brandishing a firearm;

(7) the defendant's 162-year sentence did not violate the Eighth Amendment; and

(8) sufficient evidence supported the defendant's conviction for aiding and abetting a codefendant's

possession of a firearm during a robbery.

Affirmed in part and vacated in part.

West Headnotes

**[1] Telecommunications 372 ⚷1475**

372 Telecommunications
  372X Interception or Disclosure of Electronic Communications; Electronic Surveillance
    372X(B) Authorization by Courts or Public Officers
      372k1475 k. Carrier's Cooperation; Pen Registers and Tracing. Most Cited Cases
    Provision of the Stored Communications Act (SCA) which allowed the government to obtain cell site location information from cell phone service providers on a showing that there were reasonable grounds to believe that the records or other information sought, were relevant and material to an ongoing criminal investigation violated a defendant's Fourth Amendment rights; the defendant had a reasonable expectation of privacy in his location, as it was unlikely that a cell phone customer was aware that their cell phone providers collected and stored historical location information. U.S.C.A. Const.Amend. 4; 18 U.S.C.A. § 2703(c, d).

**[2] Searches and Seizures 349 ⚷24**

349 Searches and Seizures
  349I In General
    349k24 k. Necessity of and Preference for Warrant, and Exceptions in General. Most Cited Cases
    Searches and seizures without a warrant are presumptively unreasonable. U.S.C.A. Const.Amend. 4.

**[3] Telecommunications 372 ⚷1460**

372 Telecommunications
  372X Interception or Disclosure of Electronic Communications; Electronic Surveillance

APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

--- F.3d ----, 2014 WL 2599917 (C.A.11 (Fla.)), 24 Fla. L. Weekly Fed. C 1415 Page: 18 of 35
(Cite as: 2014 WL 2599917 (C.A.11 (Fla.)))

372X(B) Authorization by Courts or Public Officers

372k1460 k. In General. Most Cited Cases

The Fourth Amendment protection against unreasonable searches and seizures shields the people from the warrantless interception of electronic data or sound waves carrying communications. U.S.C.A. Const.Amend. 4.

**[4] Searches and Seizures 349 ⌐⌐33**

349 Searches and Seizures
349I In General
349k31 Persons Subject to Limitations; Governmental Involvement
349k33 k. Private Persons. Most Cited Cases

The Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to government authorities. U.S.C.A. Const.Amend. 4.

**[5] Criminal Law 110 ⌐⌐392.38(4)**

110 Criminal Law
110XVII Evidence
110XVII(I) Competency in General
110k392.1 Wrongfully Obtained Evidence
110k392.38 Good Faith or Objectively Reasonable Conduct Doctrine
110k392.38(4) k. Reliance on Statute, Ordinance, or Precedent; Mistake of Law. Most Cited Cases

Good faith exception to the exclusionary rule applied to the government's gathering of a defendant's cell site location data without a warrant under the Stored Communications Act (SCA), even though the defendant had a reasonable expectation of privacy in the information; police officers acted in scrupulous obedience to the SCA which authorized such searches and seizures on a showing of reasonable grounds to believe that the records or other information sought, were relevant and material to an ongoing criminal investigation, and at that time, there was no governing authority affecting the constitutionality of the SCA. U.S.C.A.

Const.Amend. 4; 18 U.S.C.A. § 2703(c, d).

**[6] Criminal Law 110 ⌐⌐2091**

110 Criminal Law
110XXXI Counsel
110XXXI(F) Arguments and Statements by Counsel
110k2088 Matters Not Sustained by Evidence
110k2091 k. Personal Knowledge, Opinion, or Belief of Counsel. Most Cited Cases

A prosecutor's statement in summation to the jury that a government witness, who conspired with the defendant to commit Hobbs Act robbery, "came clean and confessed one hundred percent and told the police precisely the same story that he told all of you, the story he has told me one hundred times since" was improper commentary on evidence not presented in court when the evidence before the jury did not demonstrate that the witness told the prosecutor the same story one hundred times since his original confession.

**[7] Criminal Law 110 ⌐⌐1171.3**

110 Criminal Law
110XXIV Review
110XXIV(Q) Harmless and Reversible Error
110k1171 Arguments and Conduct of Counsel
110k1171.3 k. Comments on Evidence or Witnesses, or Matters Not Sustained by Evidence. Most Cited Cases

A prosecutor's improper commentary on the credibility of a government witness in summation to the jury was not so pervasive as to permeate the entire atmosphere of the trial, and thus did not mandate reversal of a defendant's conviction for Hobbs Act robbery, conspiracy to violate the Hobbs Act, and knowing possession of a firearm in furtherance of a crime of violence, where the improper commentary was a small item following a dense record of evidence against the defendant, and the trial court properly instructed the jurors that the prosecutor's statements were not in evidence.

# APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

--- F.3d ----, 2014 WL 2599917 (C.A.11 (Fla.)), 24 Fla. L. Weekly Fed. C 1415
(Cite as: 2014 WL 2599917 (C.A.11 (Fla.)))

**[8]** Criminal Law 110 ⟜1171.1(1)

110 Criminal Law
  110XXIV Review
    110XXIV(Q) Harmless and Reversible Error
      110k1171 Arguments and Conduct of
Counsel
        110k1171.1 In General
          110k1171.1(1) k. Conduct of Counsel in General. Most Cited Cases

Prosecutorial misconduct will result in reversal only in those instances in which the misbehavior is so pervasive as to permeate the entire atmosphere of the trial.

**[9]** Criminal Law 110 ⟜1171.1(1)

110 Criminal Law
  110XXIV Review
    110XXIV(Q) Harmless and Reversible Error
      110k1171 Arguments and Conduct of
Counsel
        110k1171.1 In General
          110k1171.1(1) k. Conduct of Counsel in General. Most Cited Cases

In order to determine whether prosecutorial misconduct based on comments to the jury permeated the entire atmosphere of a trial, the comments at issue must actually be improper, and any comments found to be improper must prejudicially affect the substantial rights of the defendant.

**[10]** Criminal Law 110 ⟜1144.15

110 Criminal Law
  110XXIV Review
    110XXIV(M) Presumptions
      110k1144 Facts or Proceedings Not
Shown by Record
        110k1144.15 k. Custody and Conduct
of Jury. Most Cited Cases

A court must presume that a jury follows its instructions.

**[11]** Sentencing and Punishment 350H ⟜1392

350H Sentencing and Punishment

350HVI Habitual and Career Offenders
  350HVI(K) Proceedings
    350Hk1390 Findings and Statement of
Reasons
      350Hk1392 k. Necessity and Purpose.
Most Cited Cases

The jury was not required to make a specific finding that the six of the defendant's robbery convictions were second or subsequent convictions for purposes of the second or subsequent sentencing enhancement, where the defendant was charged separately in his criminal indictment for each of seven robberies that occurred on separate days. 18 U.S.C.A. §§ 924(c), 1951(b)(1, 3).

**[12]** Criminal Law 110 ⟜1030(1)

110 Criminal Law
  110XXIV Review
    110XXIV(E) Presentation and Reservation in
Lower Court of Grounds of Review
      110XXIV(E)1 In General
        110k1030 Necessity of Objections in
General
          110k1030(1) k. In General. Most
Cited Cases

Under plain error review, the Court of Appeals may correct an error that the defendant did not raise only if there is: (1) error, (2) that is plain, and (3) that affects substantial rights, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

**[13]** Criminal Law 110 ⟜1042.3(1)

110 Criminal Law
  110XXIV Review
    110XXIV(E) Presentation and Reservation in
Lower Court of Grounds of Review
      110XXIV(E)1 In General
        110k1042.3 Sentencing and Punishment
          110k1042.3(1) k. In General. Most
Cited Cases

Sentencing and Punishment 350H ⟜373

APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

--- F.3d ----, 2014 WL 2599917 (C.A.11 (Fla.)), 24 Fla. L. Weekly Fed. C 1417 Page: 20 of 35
(Cite as: 2014 WL 2599917 (C.A.11 (Fla.)))

350H Sentencing and Punishment
    350HII Sentencing Proceedings in General
      350HII(G) Hearing
        350Hk369 Findings and Statement of Reasons
        350Hk373 k. Sufficiency. Most Cited Cases

    The District Court plainly erred in enhancing a defendant's conviction for Hobbs Act robbery based on a finding that the brandished a firearm, where Court's finding was inconsistent with the superseding indictment's charge and the jury's determination that the defendant only possessed the firearm, and evidence that the defendant personally brandished the firearm he possessed during a robbery was not overwhelming and essentially uncontroverted. 18 U.S.C.A. §§ 924(c), 1951(b)(1, 3).

**[14] Criminal Law 110 ⚖══1030(1)**

110 Criminal Law
    110XXIV Review
      110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
        110XXIV(E)1 In General
          110k1030 Necessity of Objections in General
          110k1030(1) k. In General. Most Cited Cases

    An error is plain, for purposes of plain error review, if it is clear from the plain meaning of a statute or constitutional provision, or from a holding of the Supreme Court or the Court of Appeals.

**[15] Criminal Law 110 ⚖══1030(1)**

110 Criminal Law
    110XXIV Review
      110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
        110XXIV(E)1 In General
          110k1030 Necessity of Objections in General
          110k1030(1) k. In General. Most Cited Cases

    An error affects substantial rights, for purposes of plain error review, if it affected the outcome of the district court proceedings.

**[16] Criminal Law 110 ⚖══1141(2)**

110 Criminal Law
    110XXIV Review
      110XXIV(M) Presumptions
        110k1141 In General
          110k1141(2) k. Burden of Showing Error. Most Cited Cases

    The defendant bears the burden of persuasion to demonstrate that a trial error substantially affected the defendant's rights, on plain error review.

**[17] Criminal Law 110 ⚖══1030(1)**

110 Criminal Law
    110XXIV Review
      110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
        110XXIV(E)1 In General
          110k1030 Necessity of Objections in General
          110k1030(1) k. In General. Most Cited Cases

    The Court of Appeals considers whether an trial error on plain error review had such an effect on the proceedings as to motivate use of the Court's discretion to restore the equality and reliability of judicial proceedings in the eyes of the public.

**[18] Sentencing and Punishment 350H ⚖══1508**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
      350HVII(E) Excessiveness and Proportionality of Sentence
        350Hk1508 k. Cumulative or Consecutive Sentences. Most Cited Cases

    A defendant's 162-year sentence for a string of robberies, in which multiple victims experienced being robbed and threatened with a handgun, was not so grossly disproportionate as to violate the Eighth Amendment. U.S.C.A. Const.Amend. 8.

# APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

--- F.3d ----, 2014 WL 2599917 (C.A.11 (Fla.)), 24 Fla. L. Weekly Fed. C 1419
(Cite as: 2014 WL 2599917 (C.A.11 (Fla.)))

Case: 12-12928    Date Filed: 08/01/2014    Page: 21 of 35

**[19] Criminal Law 110 ⛓1139**

110 Criminal Law
　　110XXIV Review
　　　　110XXIV(L) Scope of Review in General
　　　　　　110XXIV(L)13 Review De Novo
　　　　　　　　110k1139 k. In General. Most Cited Cases

　Allegations of cruel and unusual punishment are legal questions subject to de novo review by the Court of Appeals. U.S.C.A. Const.Amend. 8.

**[20] Sentencing and Punishment 350H ⛓1482**

350H Sentencing and Punishment
　　350HVII Cruel and Unusual Punishment in General
　　　　350HVII(E) Excessiveness and Proportionality of Sentence
　　　　　　350Hk1482 k. Proportionality. Most Cited Cases

　As applied to noncapital offenses, the Eighth Amendment encompasses at most only a narrow proportionality principle. U.S.C.A. Const.Amend. 8
.

**[21] Sentencing and Punishment 350H ⛓1483**

350H Sentencing and Punishment
　　350HVII Cruel and Unusual Punishment in General
　　　　350HVII(E) Excessiveness and Proportionality of Sentence
　　　　　　350Hk1483 k. Punishment Authorized by Statute. Most Cited Cases

　In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment. U.S.C.A. Const.Amend. 8.

**[22] Sentencing and Punishment 350H ⛓1482**

350H Sentencing and Punishment
　　350HVII Cruel and Unusual Punishment in General
　　　　350HVII(E) Excessiveness and Proportionality of Sentence

　　　　　　350Hk1482 k. Proportionality. Most Cited Cases

　In assessing whether a sentence for a noncapital offense violates the Eighth Amendment, a court must first make the determination whether a total sentence is grossly disproportionate to the offenses committed. U.S.C.A. Const.Amend. 8.

**[23] Weapons 406 ⛓296**

406 Weapons
　　406V Prosecution
　　　　406V(E) Weight and Sufficiency of Evidence
　　　　　　406k289 Possession, Use, Carrying
　　　　　　　　406k296 k. Parties to Crime; Aiding and Abetting. Most Cited Cases

　Sufficient evidence supported a defendant's conviction for aiding and abetting a codefendant's possession of a firearm during a robbery; jury could reasonably infer that the defendant knew a codefendant had a firearm based on the defendant's participation in prior robberies, and from the defendant's drive with the codefendant to the robbery.

**[24] Criminal Law 110 ⛓1139**

110 Criminal Law
　　110XXIV Review
　　　　110XXIV(L) Scope of Review in General
　　　　　　110XXIV(L)13 Review De Novo
　　　　　　　　110k1139 k. In General. Most Cited Cases

　The Court of Appeals reviews de novo the district court's denial of a motion for a judgment of acquittal on sufficiency of evidence grounds, and consider the evidence in the light most favorable to the Government and draw all reasonable inferences and credibility choices in the Government's favor.

**[25] Criminal Law 110 ⛓1186.1**

110 Criminal Law
　　110XXIV Review
　　　　110XXIV(U) Determination and Disposition of Cause
　　　　　　110k1185 Reversal

# APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

--- F.3d ----, 2014 WL 2599917 (C.A.11 (Fla.)), 24 Fla. L. Weekly Fed. C 1419 Page: 22 of 35
(Cite as: 2014 WL 2599917 (C.A.11 (Fla.)))

110k1186.1 k. Grounds in General.
Most Cited Cases

A conviction should be reversed only on grounds of a combination of trial errors and prosecutorial misconduct if a miscarriage of justice would otherwise result.

West Codenotes
Held Unconstitutional 18 U.S.C.A. § 2703(c, d)
.Amit Agarwal, Roy K. Altman, Kevin Quencer, Wifredo A. Ferrer, Amanda Perwin, Kathleen Mary Salyer, Anne Ruth Schultz, U.S. Attorney's Office, Miami, FL, for Plaintiff–Appellee.

Anne Margaret Hayes, Law Office of Anne M. Hayes, Cary, NC, Jacqueline Shapiro, Attorney at Law, Miami, FL, for Defendant–Appellant.

Benjamin Stevenson, ACLU of Florida, Pensacola, FL, Nathan Freed Wessler, American Civil Liberties Union, New York, NY, Maria Kayanan, ACLU Foundation of Florida, Inc., Miami, FL, for Amicus Curiae.

Appeal from the United States District Court for the Southern District of Florida. D.C. Docket No. 1:10–cr–20896–JAL–2.

Before MARTIN, DUBINA, and SENTELLE,[FN*] Circuit Judges.

SENTELLE, Circuit Judge:
**1** Appellant Quartavius Davis[FN1] was convicted by a jury on several counts of Hobbs Act robbery, 18 U.S.C. § 1951(b)(1), (3), conspiracy, 18 U.S.C. § 1951(a), and knowing possession of a firearm in furtherance of a crime of violence, 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. The district court entered judgment on the verdict, sentencing Davis to consecutive terms of imprisonment totaling 1,941 months. Davis appeals, assigning several grounds for reversal. His principal argument is that the court admitted location evidence based on stored cell site information obtained by the prosecution without a warrant, in violation of his Fourth Amendment rights. He assigns other grounds of error going to prosecutorial misconduct, evidentiary sufficiency, and sentencing. For the reasons set forth below, we hold that there is no reversible error, although we do find merit in one argument that the sentence was improperly enhanced. We therefore affirm the judgment below in large part, but vacate a sentencing enhancement regarding "brandishing" a firearm.

## BACKGROUND

On February 18, 2011, a grand jury for the Southern District of Florida returned a seventeen-count indictment against Davis and five co-defendants. Davis was named as a defendant in sixteen of the seventeen counts. Generally, the indictment charged violations of the Anti–Racketeering Act, 18 U.S.C. § 1951 (Hobbs Act), and conspiracy to violate the Hobbs Act. More specifically, the indictment charged Davis with conspiracy to engage in Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Counts 1, 15); Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2 (Counts 2, 4, 6, 8, 10, 13, 16); and with knowingly using, carrying, and possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Counts 3, 5, 7, 9, 11, 14, 17).

As part of the pretrial proceedings, Davis moved to suppress electronic location evidence that the government had obtained "without a warrant," claiming that the obtaining of that evidence violated his Fourth Amendment rights. The district court denied the motion. Davis renewed the motion during trial, and the district court again denied it. These rulings give rise to Davis's principal claim on appeal, which we will discuss further below. The prosecution proceeded to offer evidence of two conspiracies to commit Hobbs Act robbery and that Davis was part of each conspiracy. The prosecution further presented evidence that the conspirators committed such robberies.

During the trial, one member of each conspiracy testified for the United States. Willie Smith

APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

--- F.3d ----, 2014 WL 2599917 (C.A.11 (Fla.)), 24 Fla. L. Weekly Fed. C 1411
(Cite as: 2014 WL 2599917 (C.A.11 (Fla.)))

Case: 12-12928    Date Filed: 08/01/2014    Page: 23 of 35

("Smith") testified as to the first conspiracy, encompassing six robberies at commercial establishments including a Little Caesar's restaurant, an Amerika Gas Station, a Walgreens drug store, an Advance Auto Parts store, a Universal Beauty Salon, and a Wendy's restaurant. Michael Martin ("Martin") testified as to the second conspiracy, encompassing the robbery of a Mayor's Jewelry store. Smith and Martin testified that Davis was involved in each robbery, where they wore masks, carried guns, and took items such as cigarettes and cash.

**2** Additionally, an eyewitness, Edwin Negron, testified regarding Davis's conduct at Universal Beauty Salon and the adjacent Tae Kwon Do studio. He testified that Davis pointed a gun at his head, pushed a 77 year-old woman and Negron's wife to the ground, and took several items from Negron and others. Another eyewitness, Antonio Brooks, testified that he confronted Davis and his accomplices outside the Wendy's restaurant after that robbery and tried to write down the license plate of their getaway car. Brooks testified that Davis fired his gun at him, and that he returned fire towards the car.

Beyond the testimony, the government produced additional evidence. Surveillance videos showed a man matching Davis's description participating in the robberies at Walgreens, Advance Auto Parts, Wendy's, and Mayor's Jewelry. Smith and Martin identified Davis on the videos. DNA shown to be Davis's was recovered from the getaway car used to flee the scene of the Universal Beauty Salon robbery and the Mayor's Jewelry store robbery.

The prosecution also offered records obtained from cell phone service providers evidencing that Davis and his co-defendants had placed and received cell phone calls in close proximity to the locations of each of the charged robberies around the time that the robberies were committed, except for the Mayor's Jewelry store robbery. Davis preserved his objection to the cell phone location evidence and his claim that the government's obtaining such evidence without a warrant issued upon a showing of probable cause violated his rights under the Fourth Amendment.

The court submitted all counts to the jury. During jury arguments, the prosecutor made several questionable statements, including some apparently vouching for the credibility of the government's witnesses. Upon objections by the defense, the court instructed the jury to disregard the statements by the prosecution. The jury returned a verdict of guilty on all counts.

Subsequently, the district court sentenced Davis on all counts, and conducted a careful sentencing analysis on the record. Of particular note to the issues in this appeal, in the sentence on Count 3, which charged the use and carrying of a firearm during and in relation to a crime of violence, the court imposed a seven-year statutory mandatory enhancement pursuant to 18 U.S.C. § 924(c)(1)(A)(ii), which provides for such enhancement where "the firearm is brandished...." On Counts 5, 7, 9, 11, 14, and 17, which also charged the defendant with using and carrying a firearm during and in relation to a crime of violence, the court imposed a "second or subsequent" enhancement required by 18 U.S.C. § 924(c)(1)(C)(i), as each of these offenses was subsequent to the similar violation charged in Count 3. Noting that 18 U.S.C. § 924(c)(1)(D)(ii) requires consecutive sentences, the court imposed a total term of imprisonment of 1,941 months, approximately 162 years.

Davis raises several allegations of error on appeal. First, he argues that the district court's denial of his motion to suppress the cell site location information and the admission of that evidence violated his constitutional rights under the Fourth Amendment. Second, he argues that the prosecutor's misconduct during closing argument rendered his trial unfair, entitling him to a new trial. Third, he raises sentencing arguments, contending that the district court's applications of the mandatory penalty for second or subsequent offenses and for brandishing a firearm on Count 3 were in violation of

APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

his Sixth Amendment rights, and that the 162–year sentence of imprisonment constituted a cruel and unusual punishment in violation of his Eighth Amendment rights. Further, he raises an issue as to the sufficiency of evidence on the aiding and abetting the use of a firearm charge in connection with a crime of violence in Count 17. Finally, he makes a broad challenge that "the cumulative effect and prejudice arising from multiple trial errors compels reversal." We consider each of the listed arguments in turn.

I. *Fourth Amendment Issue*

**\*3** [1] Davis's Fourth Amendment argument raises issues of first impression in this circuit, and not definitively decided elsewhere in the country. The evidence at issue consists of records obtained from cell phone service providers pursuant to the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2703(c) and (d). Under that Act, the government can obtain from providers of electronic communication service records of subscriber services when the government has obtained either a warrant, § 2703(c)(A), or, as occurred in this case, a court order under subsection (d), *see* § 2703(c)(B). The order under subsection (d) does not require the government to show probable cause.

The evidence obtained under the order and presented against Davis in the district court consisted of so-called "cell site location information." That location information includes a record of calls made by the providers' customer, in this case Davis, and reveals which cell tower carried the call to or from the customer. The cell tower in use will normally be the cell tower closest to the customer. The cell site location information will also reflect the direction of the user from the tower. It is therefore possible to extrapolate the location of the cell phone user at the time and date reflected in the call record. All parties agree that the location of the user will not be determined with pinpoint precision, but the information is sufficiently specific that the prosecutor expressly relied on it in summing up to the jury in arguing the strength of the government's

case for Davis's presence at the crime scenes. Indeed, it is not overstatement to say that the prosecutor stressed that evidence and the fact that the information reflected Davis's use of cell phone towers proximate to six of the seven crime scenes at or about the time of the Hobbs Act robberies.

[2] Davis objected to the admission of the location information in the district court and now argues to us that the obtaining of that evidence violated his constitutional rights under the Fourth Amendment. That Amendment, of course, provides that "no Warrants shall issue, but upon probable cause, supported by Oath or Affirmation...." U.S. CONST. AMEND. IV. It is a "basic principle of Fourth Amendment law" that searches and seizures without a warrant "are presumptively unreasonable." *See, e.g., Groh v. Ramirez,* 540 U.S. 551, 559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004). The SCA does provide for governmental entities requiring records from communication service providers by warrant under subsection (c)(A). However, as noted above, the prosecution obtained the evidence against Davis, not by warrant under subsection (c)(A), but by order under subsection (d). As further noted above, that section does not require probable cause, but only a showing "that there are *reasonable grounds to believe* that the ... records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d) (emphasis added). Davis contends that the obtaining of the evidence required a warrant upon probable cause. The government argues that the evidence is not covered by the Fourth Amendment and was properly obtained under a court order.

**\*4** As we suggested above, the question whether cell site location information is protected by the Fourth Amendment guarantees against warrantless searches has never been determined by this court or the Supreme Court. Two circuits have considered the question, but not in the context of the use of the evidence in a criminal proceeding. Also, one of those opinions issued before the Supreme Court's decision in *United States v. Jones,* —— U.S. ——,

APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

132 S.Ct. 945, 181 L.Ed.2d 911 (2012), the most relevant Supreme Court precedent.

The Third Circuit in *In re Application of U.S. for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to Gov't,* 620 F.3d 304, 317–18 (3d Cir.2010), heard the government's appeal from an order of a magistrate judge declining to direct a service provider to furnish information by order under subsection (d) and requiring instead that the government pursue a warrant upon probable cause under subsection (c)(A). Briefly put, that circuit did vacate the magistrate judge's denial, but opined that the magistrate judge in appropriate circumstances might "require a warrant showing probable cause...." *Id.* at 319.

The Fifth Circuit, in *In re Application of U.S. for Historical Cell Site Data,* 724 F.3d 600, 612 (5th Cir.2013), reviewed an application in a similar posture. In the Fifth Circuit case, the district court had denied orders for which the government had applied under subsection (d). The Fifth Circuit clearly held that compelling production of the records on the statutory "reasonable grounds" basis is not "per se unconstitutional." *Id.* at 602. We will not review at this point the reasoning of either of our sibling circuits, given that the context of the cases is different, and one of those circuits opined before issuance of *Jones,* the most instructive Supreme Court decision in the field.

While *Jones* is distinguishable from the case before us, it concerned location information obtained by a technology sufficiently similar to that furnished in the cell site location information to make it clearly relevant to our analysis. The present case, like *Jones,* brings to the fore the existence of two distinct views of the interests protected by the Fourth Amendment's prohibition of unreasonable searches and seizures. The older of the two theories is the view that the Fourth Amendment protects the property rights of the people. This view is sometimes referred to as the "trespass" theory and "our Fourth Amendment jurisprudence was tied to common-law trespass, at least until the latter half of the

20th century." *Jones,* 132 S.Ct. at 949 (collecting authorities). However, in the twentieth century, a second view gradually developed: that is, that the Fourth Amendment guarantee protects the privacy rights of the people without respect to whether the alleged "search" constituted a trespass against property rights.

The privacy theory began to emerge at least as early as *Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928). In *Olmstead,* the government had obtained conversations of the defendants by warrantless wiretap. Because the wires that were tapped were outside the premises of the defendants, the majority of the court, relying on the trespass theory, held that the tapping did not constitute a search within the meaning of the Fourth Amendment. Justice Brandeis, in dissent, expressly viewed the provision against unlawful searches as protecting against "invasion of 'the sanctities of a man's home and the *privacies of life.'* " *Id.* at 473, 48 S.Ct. 564 (Brandeis, J., dissenting) (quoting *Boyd v. United States,* 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886) (emphasis added)). Despite Justice Brandeis's criticism, the trespass theory continued to hold sway.

**\*5** In *Goldman v. United States,* 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942), the petitioners complained against the government's electronically overhearing conversations in petitioners' offices by the warrantless placement of a listening device on an exterior wall. Because the Court, in what might be described as an esoteric discussion of the placement of the device, concluded that the interception of petitioners' conversation was not aided by trespass, there was no Fourth Amendment violation. However, the privacy theory again advanced in dissent. Chief Justice Stone and Justice Frankfurter, in a two-sentence separate opinion, simply stated their agreement with the dissent in *Olmstead,* and lamented the unwillingness of the majority to overrule that case. Justice Murphy dissented separately, expressly referencing the "right of personal privacy guaranteed by the Fourth Amendment." *Id.* at 136,

# APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 10

--- F.3d ----, 2014 WL 2599917 (C.A.11 (Fla.)), 24 Fla. L. Weekly Fed. C 1415, Page: 26 of 35
(Cite as: 2014 WL 2599917 (C.A.11 (Fla.)))

62 S.Ct. 993 (Murphy, J., dissenting).

The minutiae involved in the application of the trespass theory to the world of electronic information stood out sharply in *Silverman v. United States,* 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). In *Silverman,* police officers testified to the contents of conversations upon which they eavesdropped. The Supreme Court noted the argument of the defendants that the rationale of *Olmstead* should be reexamined, but concluded that such a reexamination was unnecessary given that the conversations were overheard by means of a "spike mike" driven into the wall of the defendant's premises and making contact with a heat duct therein so as to use the entire heating system as a listening device. Because that penetration constituted a trespass, the Court did not deem it necessary to reconsider its earlier rationale.

Finally, in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the majority of the Supreme Court accepted and relied upon the privacy theory to hold interception of a conversation unconstitutional even in the absence of a physical trespass. In *Katz*—on facts somewhat reminiscent of *Goldman*—the Court considered evidence obtained by FBI agents through a device attached to the exterior of a telephone booth but not penetrating the wall. As the government argued that there was no Fourth Amendment violation because there was no trespass, the Court squarely considered the dichotomy between the property and privacy protection theories. The Court held that such a warrantless interception did violate privacy interests protected by the Fourth Amendment. Indeed, it did so construing language from *Silverman* as already establishing "that the Fourth Amendment governs not only the seizure of tangible items, but extends as well to the recording of oral statements overheard without any 'technical trespass under ... local property law.' " *Id.* at 353, 88 S.Ct. 507 (quoting *Silverman,* at 511, 81 S.Ct. 679). Only one justice dissented in *Katz* and it became indisputable in 1967 that the privacy protection theory was indeed vi-

able.

[3] Therefore, it cannot be denied that the Fourth Amendment protection against unreasonable searches and seizures shields the people from the warrantless interception of electronic data or sound waves carrying communications. The next step of analysis, then, is to inquire whether that protection covers not only content, but also the transmission itself when it reveals information about the personal source of the transmission, specifically his location. The Supreme Court in *Jones* dealt with such an electronic seizure by the government and reached a conclusion instructive to us in the present controversy.

**\*6** The *Jones* case involved not cell site location data, but the somewhat similar location data generated by a Global–Positioning–System (GPS) tracking device attached to the automobile of a suspected drug dealer by law enforcement agents. Although the agents originally attached the device and gathered the information transmitted by it under the authority of a warrant, that warrant authorized installation in the District of Columbia for a period of ten days. The agents installed the device on the eleventh day outside the District of Columbia. The government then tracked the vehicle's movements for twenty-eight days. The prosecution offered the resulting record of the defendant's movements and whereabouts over that period of time in evidence against him in his trial for drug trafficking conspiracy.

The trial court in *Jones* suppressed the location evidence generated by the device on Jones's vehicle while it was parked in his own premises, but admitted the data reflecting its movements on the streets and highways in the belief that Jones would have no reasonable expectation of privacy when the vehicle was on public streets. *See United States v. Jones,* 451 F.Supp.2d 71, 87–89 (D.D.C.2006). On conviction, Jones and a codefendant, Maynard, appealed. The Court of Appeals for the District of Columbia Circuit reviewed the Fourth Amendment issue and noted that the prosecution had employed

# APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

the GPS device to track Jones's "movements continuously for a month." *United States v. Maynard, 615 F.3d 544, 549 (D.C.Cir.2010).* The court considered the government's argument that each of Jones's movements over the month was exposed to the public, and that therefore, he had no reasonable expectation of privacy in them. The court rejected this argument, noting that "the whole of one's movements over the course of a month ... reveals far more than the individual movements that it comprises. The difference is not one of degree but of kind, for no single journey reveals the habits and patterns that mark the distinction between a day in the life and a way of life, nor the departure from a routine that ... may reveal even more." *Id.* at 561–62.

By way of example, the court noted that "[r]epeated visits to a church, a gym, a bar, or a bookie tell a story not told by a single visit...." *Id.* at 562. The court noted further that "the sequence of a person's movements can reveal still more; a single trip to a gynecologist's office tells little about a woman, but that trip followed a few weeks later by a visit to a baby supply store tells a different story." *Id.*

The court recalled the "mosaic theory" often relied upon by the government "in cases involving national security information." *Id.* As the Supreme Court has observed in that context, "what may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context." *CIA v. Sims, 471 U.S. 159, 170, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985)* (internal quotation marks and citations omitted). The circuit reasoned that although each element of Jones's movements throughout the month might have been exposed to the public, the "aggregation of [those] movements over the course of a month," was not so exposed, and his expectation of privacy was reasonable. *Maynard, 615 F.3d at 563.* The court reversed Jones's conviction. The United States sought and obtained *certiorari.* The Supreme Court affirmed.

Like the Court of Appeals, the High Court concluded that the warrantless gathering of the GPS location information had violated Jones's Fourth Amendment rights.

**\*7** While the *Jones* case does instruct our analysis of the controversy before us, it does not conclude it. As discussed at length above, Fourth Amendment jurisprudence has dual underpinnings with respect to the rights protected: the trespass theory and the privacy theory. In *Jones,* Justice Scalia delivered the decision of the Court in an opinion that analyzed the facts on the basis of the trespass theory. Because the agents had committed a trespass against the effects of Jones when they placed the GPS device on his car, the opinion of the Court did not need to decide whether Jones's reasonable expectation of privacy had been violated because his rights against trespass certainly had.

As the United States rightly points out, in the controversy before us there was no GPS device, no placement, and no physical trespass. Therefore, although *Jones* clearly removes all doubt as to whether electronically transmitted location information can be protected by the Fourth Amendment, it is not determinative as to whether the information in this case is so protected. The answer to that question is tied up with the emergence of the privacy theory of Fourth Amendment jurisprudence. While *Jones* is not controlling, we reiterate that it is instructive.

In *Jones,* Justice Scalia's opinion for the Court speaks on behalf of the author and three other Justices, Chief Justice Roberts, and Justices Kennedy and Thomas. It is, however, a true majority opinion, as Justice Sotomayor, who wrote separately, "join[ed] the majority's opinion." *Jones, 132 S.Ct. at 957.* However, she did so in a separate concurrence that thoroughly discussed the possible applicability of the privacy theory to the electronic data search. We note that she fully joined the majority's opinion, and was certainly part of the majority that held that such a search is violative under the trespass theory.

# APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 12

--- F.3d ----, 2014 WL 2599917 (C.A.11 (Fla.)), 24 Fla. L. Weekly Fed. C 1418, Page: 28 of 35
(Cite as: 2014 WL 2599917 (C.A.11 (Fla.)))

Four other justices concurred in the result in an opinion authored by Justice Alito, which relied altogether on the privacy theory. Justice Alito wrote, "I would analyze the question presented in this case by asking whether respondent's reasonable expectations of privacy were violated by the long-term monitoring of the movements of the vehicle he drove." *Id.* at 958 (Alito, J., concurring in the result). Justice Alito and the justices who joined him ultimately concurred in the result because they did conclude that "the lengthy monitoring that occurred in this case constituted a search under the Fourth Amendment." *Id.* at 964. Justice Sotomayor, in her separate concurrence, opined that it was not necessary to answer difficult questions concerning the applicability of the reasonable-expectation-of-privacy test to the *Jones* facts "because the government's physical intrusion on Jones' jeep supplies a narrower basis for decision." *Id.* at 957 (Sotomayor, J., concurring). Conspicuously, she also noted that "in cases involving even short-term monitoring, some unique attributes of GPS surveillance relevant to the *Katz* analysis will require particular attention." *Id.* at 955. She noted that electronic "monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations." *Id.* (citing *People v. Weaver,* 12 N.Y.3d 433, 882 N.Y.S.2d 357, 909 N.E.2d 1195, 1199 (2009)).

**\*8** Even the opinion of the Court authored by Justice Scalia expressly did not reject the applicability of the privacy test. While chiding the concurrence for "mak[ing] *Katz* the exclusive test," the opinion of the Court expressly noted that "[s]ituations involving merely the transmission of electronic signals without trespass would *remain* subject to [the] *Katz* [privacy] analysis." *Id.* at 953. In light of the confluence of the three opinions in the Supreme Court's decision in *Jones,* we accept the proposition that the privacy theory is not only alive and well, but available to govern electronic information of search and seizure in the absence of

trespass.

Having determined that the privacy theory of Fourth Amendment protection governs this controversy, we conclude that the appellant correctly asserts that the government's warrantless gathering of his cell site location information violated his reasonable expectation of privacy. The government argues that the gathering of cell site location information is factually distinguishable from the GPS data at issue in *Jones.* We agree that it is distinguishable; however, we believe the distinctions operate against the government's case rather than in favor of it.

*Jones,* as we noted, involved the movements of the defendant's automobile on the public streets and highways. Indeed, the district court allowed the defendant's motion to suppress information obtained when the automobile was not in public places. The circuit opinion and the separate opinions in the Supreme Court concluded that a reasonable expectation of privacy had been established by the aggregation of the points of data, not by the obtaining of individual points. Such a mosaic theory is not necessary to establish the invasion of privacy in the case of cell site location data.

One's car, when it is not garaged in a private place, is visible to the public, and it is only the aggregation of many instances of the public seeing it that make it particularly invasive of privacy to secure GPS evidence of its location. As the circuit and some justices reasoned, the car owner can reasonably expect that although his individual movements may be observed, there will not be a "tiny constable" hiding in his vehicle to maintain a log of his movements. 132 S.Ct. at 958 n. 3 (Alito, J., concurring). In contrast, even on a person's first visit to a gynecologist, a psychiatrist, a bookie, or a priest, one may assume that the visit is private if it was not conducted in a public way. One's cell phone, unlike an automobile, can accompany its owner anywhere. Thus, the exposure of the cell site location information can convert what would otherwise be a private event into a public one. When one's whereabouts

# APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

are not public, then one may have a reasonable expectation of privacy in those whereabouts. Therefore, it may be the case that even in light of the *Jones* opinion, GPS location information on an automobile would be protected only in the case of aggregated data, even one point of cell site location data can be within a reasonable expectation of privacy. In that sense, cell site data is more like communications data than it is like GPS information. That is, it is private in nature rather than being public data that warrants privacy protection only when its collection creates a sufficient mosaic to expose that which would otherwise be private.

**\*9** The United States further argues that cell site location information is less protected than GPS data because it is less precise. We are not sure why this should be significant. We do not doubt that there may be a difference in precision, but that is not to say that the difference in precision has constitutional significance. While it is perhaps possible that information could be sufficiently vague as to escape the zone of reasonable expectation of privacy, that does not appear to be the case here. The prosecutor at trial stressed how the cell phone use of the defendant established that he was near each of six crime scenes. While committing a crime is certainly not within a legitimate expectation of privacy, if the cell site location data could place him near those scenes, it could place him near any other scene. There is a reasonable privacy interest in being near the home of a lover, or a dispensary of medication, or a place of worship, or a house of ill repute. Again, we do not see the factual distinction as taking Davis's location outside his expectation of privacy. That information obtained by an invasion of privacy may not be entirely precise does not change the calculus as to whether obtaining it was in fact an invasion of privacy.

[4] Finally, the government argues that Davis did not have a reasonable expectation of privacy because he had theretofore surrendered that expectation by exposing his cell site location to his service provider when he placed the call. The government correctly notes that "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to government authorities...." *United States v. Miller,* 425 U.S. 435, 443, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). In *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), at the request of law enforcement authorities, a telephone company installed a pen register to record numbers dialed from the defendant's telephone. The *Smith* Court held that telephone users had no subjective expectation of privacy in dialed telephone numbers contained in telephone companies' records. *Id.* at 742–44, 99 S.Ct. 2577. While the government's position is not without persuasive force, it does not ultimately prevail.

The Third Circuit considered this argument in *In re Electronic Communications Service to Disclose, supra.* As that circuit noted, the Supreme Court in *Smith* reasoned that phone subscribers "assumed the risk that the company would reveal to police the numbers [they] dialed." 442 U.S. at 744, 99 S.Ct. 2577. *See also* 620 F.3d at 304. The reasoning in *Smith* depended on the proposition that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties," 442 U.S. at 743–44, 99 S.Ct. 2577. The Third Circuit went on to observe that "a cell phone customer has not 'voluntarily' shared his location information with a cellular provider in any meaningful way." That circuit further noted that "it is unlikely that cell phone customers are aware that their cell phone providers collect and *store historical location information.*" 620 F.3d at 317 (emphasis added). Therefore, as the Third Circuit concluded, "when a cell phone user makes a call, the only information that is voluntarily and knowingly conveyed to the phone company is the number that is dialed, and there is no indication to the user that making that call will also locate the caller." *Id.* Even more persuasively, "when a cell phone user receives a call, he hasn't voluntarily exposed anything at all." *Id.* at 317–18.

# APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 14

--- F.3d ----, 2014 WL 2599917 (C.A.11 (Fla.)), 24 Fla. L. Weekly Fed. C 1415 Page: 30 of 35
(Cite as: 2014 WL 2599917 (C.A.11 (Fla.)))

**\*10** Supportive of this proposition is the argument made by the United States to the jury. The prosecutor stated to the jury "that obviously Willie Smith, like [Davis], probably had no idea that by bringing their cell phones with them to these robberies, they were allowing [their cell service provider] and now all of you to follow their movements on the days and at the times of the robberies...." Just so. Davis has not voluntarily disclosed his cell site location information to the provider in such a fashion as to lose his reasonable expectation of privacy.

In short, we hold that cell site location information is within the subscriber's reasonable expectation of privacy. The obtaining of that data without a warrant is a Fourth Amendment violation. Nonetheless, for reasons set forth in the next section of this opinion, we do not conclude that the district court committed a reversible error.

II. *The* Leon *Exception*

[5] The United States contends that even if we conclude, as we have, that the gathering of the cell site location data without a warrant violated the constitutional rights of the defendant, we should nonetheless hold that the district court did not commit reversible error in denying appellant's motion to exclude the fruits of that electronic search and seizure under the "good faith" exception to the exclusionary rule recognized in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We agree.

In *Leon,* the Court observed that " '[i]f the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.' " *Id.* at 919, 104 S.Ct. 3405 (quoting *United States v. Peltier,* 422 U.S. 531, 542, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975)). In *Leon,* the Supreme Court reviewed the exclusion of evidence seized "by officers acting in reasonable reliance on

a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." 468 U.S. at 900, 104 S.Ct. 3405. The High Court held that "when an officer acting with objective good faith has obtained a search warrant from a judge ... and acted within its scope," the exclusionary rule should not be employed to "[p]enaliz[e] the officer for the magistrate's error." *Id.* at 920–21, 104 S.Ct. 3405. As the Court observed in *Leon,* such an application of the exclusionary rule "cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.*

The only differences between *Leon* and the present case are semantic ones. The officers here acted in good faith reliance on an order rather than a warrant, but, as in *Leon,* there was a "judicial mandate" to the officers to conduct such search and seizure as was contemplated by the court order. *See id.* at 920 n. 21, 104 S.Ct. 3405. As in *Leon,* the officers "had a sworn duty to carry out" the provisions of the order. *Id.* Therefore, even if there was a defect in the issuance of the mandate, there is no foundation for the application of the exclusionary rule.

**\*11** We further add that *Leon* speaks in terms of the "magistrate's" error. Here, the law enforcement officers, the prosecution, and the judicial officer issuing the order, all acted in scrupulous obedience to a federal statute, the Stored Communications Act, 18 U.S.C. § 2703. At that time, there was no governing authority affecting the constitutionality of this application of the Act. There is not even allegation that any actor in the process evidenced anything other than good faith. We therefore conclude that under the *Leon* exception, the trial court's denial of the motions to suppress did not constitute reversible error.

III. *Prosecutorial Misconduct*

[6] Appellant argues that the trial prosecutor, in his summation to the jury, engaged in improper behaviors that irreparably tainted Davis's trial. While he refers to several parts of the argument, the two that typify his argument were the prosecutor's refer-

APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 15

--- F.3d ----, 2014 WL 2599917 (C.A.11 (Fla.)), 24 Fla. L. Weekly Fed. C 1418
(Cite as: 2014 WL 2599917 (C.A.11 (Fla.)))

ence to a substance, perhaps blood, being "all over" a getaway car, when in fact there were only a few drops; and what appellant describes as "long strings of bolstering witnesses' testimony." We have reviewed the trial transcript of the closing argument and conclude that the prosecutor's statements warrant no relief on appeal.

As to the statements described by Davis as exaggeration of the evidence, we see no more than rhetorical flourish. The prosecution could, without violating Davis's rights, characterize the evidence as could the defense counsel in presenting Davis's case. The bolstering is admittedly troubling.

The problem of a prosecutor's vouching for government witnesses is indeed a very real one. In *United States v. Young,* 470 U.S. 1, 18–19, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the Supreme Court observed that prosecutorial vouching

can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

The Supreme Court's analysis of the prosecutor's role draws a clean line. He may comment on the evidence before the jury, but he may not augment that evidence by implication that he or others on the prosecution team are aware of further evidence not presented in court. While we recognize that in the heat of the courtroom, an arguing lawyer may say things he would later regret, the record in this case discloses that the prosecutor did cross that line. Specifically, he stated, with respect to the government witness Martin, "he came clean and confessed [one hundred] percent and told the police precisely the same story that he told all of you, the story he has told me one hundred times since."

The evidence before the jury certainly did not demonstrate that Martin had told the prosecutor the same story one hundred times since his original confession. The government argued to us that the phrase "one hundred times" is only a colloquialism and that the argument "relied on facts in evidence." Appellee's Br. at 33. We cannot agree with this styling, but nonetheless conclude that there is no ground for reversal here.

**\*12** [7][8][9] Prosecutorial misconduct will result in reversal only in those instances in which the misbehavior is so pervasive as to "permeate the entire atmosphere of the trial." *United States v. McLain,* 823 F.2d 1457, 1462 (11th Cir.1987). We proceed under a two-part test. First, the comments at issue must actually be improper, and second, any comments found to be improper must prejudicially affect the substantial rights of the defendant. *United States v. Schmitz,* 634 F.3d 1247, 1267 (11th Cir.2011).

We conclude that no such prejudicial effect is present. The improper remark here is a small item following a dense record of evidence against the defendant, and evidence which in fact included prior consistent statements by the witness Martin.

[10] Further, and of great importance, the district court removed the comments from the jury's consideration and properly instructed the jurors on the nature of closing arguments. The court instructed that the prosecutor's statements were "not in evidence, and even if [they were], that doesn't make [them] true or not true." We must presume that a jury follows its instructions. *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). In short, the prosecutor's statements are not a basis for reversal.

IV. *The Sentencing Enhancements*

[11] Davis raises two constitutional objections to the computation of his sentence. He contends that the enhancement for the second or subsequent offenses and for brandishing a weapon were imposed in violation of his Sixth Amendment right to

APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 16

--- F.3d ----, 2014 WL 2599917 (C.A.11 (Fla.)), 24 Fla. L. Weekly Fed. C 141\*
(Cite as: 2014 WL 2599917 (C.A.11 (Fla.)))

trial by jury; the underlying facts, in the one case "subsequence," and in the second case "brandishing," were not found by a jury beyond a reasonable doubt. Upon review, we conclude that his claim warrants no relief as to the second or subsequent enhancement, but is meritorious on the brandishing issue.

This sort of Sixth Amendment claim is governed by the Supreme Court decision in *Alleyne v. United States,* —— U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). In *Alleyne,* the Supreme Court overruled its prior opinion in *Harris v. United States,* 536 U.S. 545, 551–56, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), and held that the Sixth Amendment requires any fact which increases a mandatory minimum sentence to be submitted to the jury. *Alleyne,* 133 S.Ct. at 2162–63. However, the *Alleyne* decision does not warrant relief on the "second or subsequent" mandate for consecutive sentences. *Alleyne* relied heavily on *Apprendi v. New Jersey,* in which the Court specifically excluded the fact of a prior conviction from its general holding requiring a jury to pass on those issues increasing the penalty beyond a statutory maximum. 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Alleyne,* the Court declined to reconsider its holding in *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), that the fact of a prior conviction need not be treated as an element of an offense. *Alleyne,* 133 S.Ct. at 2160 n. 1. It follows, then, that we may not revisit this holding either.

**\*13** The jury did not make a specific finding that the convictions for Counts 5, 7, 9, 11, 14, and 17 were second or subsequent convictions under 18 U.S.C. § 924(c). However, there is no *Alleyne* violation where the judicial finding is the fact of a prior conviction, a finding the jury need not make. In any event, the superseding indictment charged Davis separately as to each of the seven robberies that occurred on separate days. By virtue of logic, each of Counts 5, 7, 9, 11, 14, and 17 was second or subsequent when the jury found that they were com-

mitted as set forth in the superseding indictment. We can offer no relief based on Davis's contention that a concurrently found conviction should be treated differently for Sixth Amendment purposes from a conviction which predates the indictment in the current case. He cites *Shepard v. United States,* 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), but *Shepard* does not speak to the issue before us. It discusses only the types of documents a sentencing court can consider. Accordingly, the district court did not err in sentencing Davis to consecutive mandatory terms of imprisonment based on its finding that his convictions were second or subsequent enhancements within the meaning of 18 U.S.C. § 924(c).

[12] The "brandishing" issue, however, does warrant relief. Although Davis did not raise the issue below, an appellate court can review for errors not raised at trial under the "plain error" standard. Under that standard, we may correct the error that the defendant did not raise only if there is "(1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. McKinley,* 732 F.3d 1291, 1295 (11th Cir.2013). If these three elements are met, we may then in our discretion correct the error, only if "(4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* For example, the fourth prong of plain error review would not be met "where the evidence of a statutory element of an offense is overwhelming and essentially uncontroverted." *Id. at 1297.*

[13][14][15][16][17] A sentencing decision is in error when it violates a relevant Supreme Court ruling. *See United States v. Rodriguez,* 398 F.3d 1291, 1298 (11th Cir.2005). An error is plain if it is "clear from the plain meaning of a statute or constitutional provision, or from a holding of the Supreme Court or this Court." *United States v. Pantle,* 637 F.3d 1172, 1174–75 (11th Cir.2011). An error affects substantial rights if it affected the outcome of the district court proceedings. *Rodriguez,* 398 F.3d at 1299. The defendant bears the burden of

# APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 17

--- F.3d ----, 2014 WL 2599917 (C.A.11 (Fla.)), 24 Fla. L. Weekly Fed. C 1415, Page: 33 of 35
(Cite as: 2014 WL 2599917 (C.A.11 (Fla.)))

persuasion to demonstrate such prejudice. *Id.* Finally, we consider whether the error had such an effect on the proceedings as to motivate use of our discretion to restore the equality and reliability of judicial proceedings in the eyes of the public. *United States v. Shelton,* 400 F.3d 1325, 1332–33 (11th Cir.2005).

On Count 3, the jury found that Davis "possessed a firearm in furtherance of the robbery." At the sentencing hearing, the district court heard from the probation officer, who reported that "Count 3, which is possession of a firearm in furtherance of a crime of violence ... calls for a minimum imprisonment sentence of seven years...." The district court imposed then "84 months [seven years] as to Count 3 to be served consecutively to the terms imposed as to [the other counts]." The text of 18 U.S.C. § 924(c)(1)(A)(ii) requires that "if the firearm is brandished, [the defendant] be sentenced to a term of imprisonment of not less than 7 years." For possession, the applicable sentence is "a term of imprisonment of not less than 5 years." § 924(c)(1)(A)(i). The district court's finding vis á vis Count 3 is therefore inconsistent with the superseding indictment's charge, and the jury's finding, of possession rather than brandishing.

**\*14** In reviewing the prejudicial effect of the deviation, we note that the district judge candidly stated that if he were not constrained by statutory maxima, he "would impose a sentence here that would not be a life sentence." It therefore appears that the extra length on this count would not have been imposed in the absence of what we now view as a plain error. Additionally, we also find that this error "affected the fairness, integrity, or public reputation of the judicial proceedings." *McKinley,* 732 F.3d at 1297. The evidence that Davis personally brandished the firearm he possessed during the robbery of the Little Caesar's restaurant is not "overwhelming and essentially uncontroverted." *Id.* To the contrary, only one witness testified that a gun was pointed at her, and there is no evidence that Davis was the one who did it. Further, the jury

had an opportunity to convict Davis of either (1) possessing a firearm in furtherance of the robbery or (2) using or carrying a firearm in furtherance of the robbery. Yet it only found that Davis possessed a firearm. We therefore will be constrained to vacate the extension of the sentence. In doing so, we observe on behalf of both the judge who entered the sentence and the counsel who did not raise the error that the trial in this case preceded the Supreme Court decision in *Alleyne.*

**V.** *Eighth Amendment Claim*

[18] Davis argues that the 162–year sentence, which obviously amounts to a life sentence, constitutes cruel and unusual punishment. In support of this proposition, he stresses that he was eighteen and nineteen years old at the time of the commission of the offenses, and suffered from bipolar disorder and a severe learning disability, and had no prior convictions. While these are no doubt significant factors, we can grant no relief on this issue.

[19] Allegations of cruel and unusual punishment are legal questions subject to our *de novo* review. *United States v. Haile,* 685 F.3d 1211, 1222 (11th Cir.2012), *cert. denied,* —— U.S. ——, 133 S.Ct. 1723, 185 L.Ed.2d 785 (2013).

Davis argues that the mandatory consecutive nature of his sentence violated the Eighth Amendment's prohibition on cruel and unusual punishment. He views his sentence, totaling nearly 162 years, as grossly disproportionate when considering his youth, intellectual disability, and emotional maturity, and as especially harsh for a non-homicide offense. For its part, the Government relies on the rarity of successful proportionality cases for adult offenders outside the capital context.

[20][21][22] As applied to noncapital offenses, the Eighth Amendment encompasses at most only a narrow proportionality principle. *United States v. Brant,* 62 F.3d 367, 368 (11th Cir.1995) (citing *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)). We accord substantial deference to Congress: "In general, a sentence

# APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 18

--- F.3d ----, 2014 WL 2599917 (C.A.11 (Fla.)), 24 Fla. L. Weekly Fed. C 1419 Page: 34 of 35
(Cite as: 2014 WL 2599917 (C.A.11 (Fla.)))

within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Johnson,* 451 F.3d 1239, 1243 (11th Cir.2006) (quotation omitted). We must first make the determination whether a total sentence is grossly disproportionate to the offenses committed. *Id.* In *United States v. Farley,* 607 F.3d 1294, 1339 (11th Cir.2010), we held that the mandatory nature of a noncapital penalty is irrelevant for proportionality purposes, and observed that we have never found a term of imprisonment to violate the Eighth Amendment. *Id.* at 1343. Nor do we do so now.

**\*15** Here, Davis's total sentence is unmistakably severe. However, a gross proportionality analysis necessarily compares the severity of a sentence to the crimes of conviction, and Davis's crimes were numerous and serious. Multiple victims experienced being robbed and threatened with a handgun. Davis's use of a handgun entailed a risk or severe injury or death. Trial testimony established that Davis shot at a dog, and actually exchanged fire with a witness following the Wendy's robbery. We cannot conclude that such repeated disregard for the law and for victims should overcome Congress's determination of what constitutes an appropriate sentence, even when Eighth Amendment concerns are implicated.

VI. *Sufficiency of the Evidence on Count 17*

[23] Davis contends that the district court erred by denying his motion for judgment of acquittal on Count 17 because, in his view, the evidence failed to establish that he facilitated a codefendant's use of a firearm during the Mayor's Jewelry Store robbery. We disagree.

[24] We review *de novo* the district court's denial of a motion for a judgment of acquittal on sufficiency of evidence grounds. *United States v. Browne,* 505 F.3d 1229, 1253 (11th Cir.2007). We consider the evidence in the light most favorable to the Government and draw all reasonable inferences and credibility choices in the Government's favor. *United States v. Friske,* 640 F.3d 1288, 1290–91 (11th Cir.2011).

Davis argues that there is insufficient evidence to support his conviction on Count 17 of the superseding indictment, which charges aiding and abetting a codefendant's possession of a firearm during the jewelry store robbery. In his estimation, the evidence does not show that he had prior knowledge of any gun before the jewelry store robbery. In fact, he tells us, the evidence establishes that he was not involved in the planning of the robbery, precluding his prior knowledge of the firearm. At most, the jury intuited that Davis had prior knowledge of the gun, which is an insufficient basis on which to sustain his conviction.

The Government argues that a reasonable construction of the evidence demonstrates that Davis knew his codefendant would be carrying a gun during the jewelry store robbery and that Davis enjoyed the protection of the firearm during the commission of the robbery. According to the Government, its evidence constitutes a showing sufficient to support a conviction for aiding and abetting a codefendant's possession of a firearm.

Recently, the Supreme Court decided *Rosemond v. United States,* —U.S. ——, 134 S.Ct. 1240, 188 L.Ed.2d 248 (2014), in which it clarified the standard regarding the precise question before us: What must the Government show when it seeks to establish that a defendant is guilty of aiding or abetting the offense of using or carrying a firearm during a crime of violence? In *Rosemond,* the Court held that the Government must prove that the defendant "actively participated in the underlying ... violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." *Rosemond,* 134 S.Ct. at 1243.

**\*16** The Government, as part of its sufficiency argument, notes that Davis must have seen the gun during the robbery, and thus the knowledge element is met. We note that under *Rosemond,* such a scenario may constitute insufficient evidence if it means that Davis "at that late point ha[d] no realistic op-

# APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 19

--- F.3d ----, 2014 WL 2599917 (C.A.11 (Fla.)), 24 Fla. L. Weekly Fed. C 1413
**(Cite as: 2014 WL 2599917 (C.A.11 (Fla.)))**

portunity to quit the crime." *Rosemond,* 134 S.Ct. at 1249. However, Davis does not argue his inability to retreat, and regardless, this point is beyond the scope of our analysis. We need only decide whether Davis had the requisite "advance knowledge" described in *Rosemond.*

After *Rosemond,* and considering the evidence in the light most favorable to the Government, a reasonable construction of the evidence supports conviction on Count 17. The Government established that Davis drove from Miami–Dade County to the robbery site in Broward County with his codefendant, Fisher, who was the gunman. Both Davis and Fisher sat in the backseat, and the driver of the car turned and handed Fisher the handgun that would be used during the robbery. We agree with the Government and the district court that the jury could reasonably infer Davis's knowledge of the gun, based on its evaluation of the evidence as tending to demonstrate that Davis saw the gun in the car. Likewise, the jury may have inferred knowledge based on its finding that Davis participated in prior robberies, or that he assisted in planning the jewelry store robbery. We leave the jury's finding on aiding and abetting in Count 17 undisturbed, as it was based on sufficient evidence.

VII. *Accumulation of Trial Errors Claim*

We need not linger long over Davis's final claim. Davis contends that we should grant relief where "a combination of trial errors and prosecutorial misconduct [denies] a defendant a fair trial, regardless of whether the individual errors require reversal on their own." Appellant's Br. at 42 (citing *United States v. Elkins,* 885 F.2d 775 (11th Cir.1989)). This is clearly correct as an abstract proposition of law, but it does not apply to this case.

[25] Our precedent counsels that a combination of trial errors and prosecutorial misconduct can serve to render a trial unfair, despite no single error requiring reversal. *Id.* at 787. However, such a combination is rare because "a conviction should be reversed only if 'a miscarriage of justice would oth-

erwise result.' " *Id.* (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). This is not one of those rare cases.

As we make clear in our discussion above, the limited misconduct by the prosecutor was readily cured by the instruction of the trial court. The only cognizable error by the trial court is the admission of the cell site location information, which was at best understandable, given the uncertainty of the law on the subject, and at worst harmless, given that the evidence was admissible against Davis, albeit on a different theory (the *Leon* exception) than that on which it was propounded.

**CONCLUSION**

**\*17** For the reasons set forth above, we affirm the judgment of conviction and vacate only that portion of the sentence attributable to the enhancement for brandishing.

FN\* Honorable David Bryan Sentelle, United States Circuit Judge for the District of Columbia, sitting by designation.

FN1. The Presentence Investigation Report notes that "Quartavius" is the correct spelling of appellant's first name, despite the spelling in the caption. PSR at 5.

C.A.11 (Fla.),2014.
U.S. v. Davis
--- F.3d ----, 2014 WL 2599917 (C.A.11 (Fla.)), 24 Fla. L. Weekly Fed. C 1413

END OF DOCUMENT

# APPENDIX

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.